# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

AFFINIPAY, LLC AND AFFINIPAY    )
PARENT, LLC,    )
   )
      Plaintiffs,    )
   )   C.A. No. 2021-0549-LWW
      v.    )
   )
THOMAS WEST,    )
   )
      Defendant.    )

## MEMORANDUM OPINION

Date Submitted: August 19, 2021
Date Decided: September 17, 2021

Rudolf Koch and Ryan D. Konstanzer, RICHARDS, LAYTON, & FINGER, P.A., Wilmington, Delaware; Joseph P. Rockers and Batoul Husain, GOODWIN PROCTER LLP, Boston, Massachusetts; *Counsel for Plaintiffs AffiniPay, LLC and AffiniPay Parent, LLC*

Peter B. Ladig, Thad J. Bracegirdle, and Justin C. Barrett, BAYARD, P.A., Wilmington, Delaware; *Counsel for Defendant Thomas West*

**WILL, Vice Chancellor**

This case arises from a disagreement over the number of vested options and the valuation of incentive units granted to a former Chief Executive Officer. The underlying dispute is subject to arbitration. The only issue presented to this court is where and how those claims should be properly adjudicated.

The parties negotiated a series of agreements to govern the former officer's option grants and incentive units. Those agreements contain a trio of dispute resolution provisions that call for different arbitral forums applying different arbitral procedures. The agreements each contemplate that the arbitrator (albeit different arbitrators) will decide the question of arbitrability.

The former officer—the defendant in this action—has initiated an arbitration proceeding applying procedures called for in one of the agreements. The plaintiff— his former employer—contends that the arbitration violates the dispute resolution provisions in the other two agreements, which are relevant to the former officer's claims. The plaintiff asks that I preliminary enjoin those claims from proceeding in the pending arbitration. The former officer asserts that this court lacks subject matter jurisdiction to decide the preliminary injunction motion because the parties delegated the issue of substantive arbitrability to the arbitrator. He has moved to dismiss on that basis.

In this decision, I conclude that it is impossible to discern which arbitrator the parties intended to decide the matter of arbitrability given the parties' agreement to

1

three different dispute resolution provisions. The court therefore has subject matter jurisdiction to resolve that dispute and the defendant's motion to dismiss is denied. Because the plaintiff has demonstrated that the elements of a preliminary injunction are satisfied, I grant the plaintiff's motion and preliminary enjoin the equity-based claims from proceeding in the pending arbitration.

## I.     FACTUAL BACKGROUND

The following facts are drawn from the Verified Complaint and the documents it incorporates by reference.[1]

### A.     The Employment Agreement

Plaintiffs AffiniPay, LLC and AffiniPay Parent, LLC (together, "AffiniPay") are Delaware entities with their principal places of business in Austin, Texas.[2] AffiniPay is a fintech market leader providing payment technology services to legal, accounting, and association professionals throughout the United States.[3] Defendant Thomas West, a resident of Texas, was hired by AffiniPay on September 4, 2018 to

---

[1] Verified Compl. ("Compl.") (Dkt. 1). *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms."); *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint . . . ."), *aff'd*, 58 A.3d 414 (Del. 2013).

[2] Compl. ¶ 11.

[3] *Id*. ¶¶ 2, 15.

serve as its Chief Growth Officer and later became its Chief Executive Officer.[4] Upon his hiring, West and AffiniPay entered into an Employment Agreement outlining West's duties, compensation and benefits, and other aspects of West's employment.[5]

West was granted options in AffiniPay that vested over time as part of his compensation package.[6] The Employment Agreement states in Section 3(D) that West would be "granted an option . . . under the AffiniPay Holdings LLC Unit Option Plan" (the "2016 Option Plan") to purchase incentive units in AffiniPay.[7] The Employment Agreement also provides that the options would be "subject to all other terms and conditions set forth in the [2016] Option Plan" and to the parties' September 4, 2018 Unit Option Award Agreement (the "Award Agreement").[8]

The vesting schedule included in Section 3(D) of the Employment Agreement explains that, "[i]n the event of [West's] termination of employment with [AffiniPay] for any reason," the options may be cancelled or repurchased by AffiniPay "in accordance with the terms of the [2016] Option Plan and [A]ward

---

[4] *Id.* ¶¶ 2, 16.

[5] *Id.* ¶ 16.

[6] *Id.* ¶ 3.

[7] Compl. Ex. B § 3(D).

[8] *Id.*

[A]greement."[9] Section 3(D) of the Employment Agreement further explains that "to the extent the terms of the [2016] Option Plan or Award Agreement conflict with this Section 3(D), the terms of the [2016] Option Plan or Award Agreement shall control."[10]

The Employment Agreement includes an arbitration clause:

> [A]ny and all disputes or claims arising out of or relating to [the Employment Agreement] or concerning [West's] employment with [AffiniPay] or termination thereof shall be settled by final and binding arbitration to be conducted in Austin, Texas, under the then existing Employment Arbitration and Mediation Procedures [Employment Arbitration Rules]) of the American Arbitration Association ('AAA').[11]

The arbitration clause further provides that "[a]ny disagreement as to whether a particular dispute is arbitrable under [the Employment Agreement] will itself be subject to determination by the arbitrator in arbitration in accordance with the procedures set forth herein."[12]

## B. The Award Agreement and 2016 Option Plan

On September 4, 2018, AffiniPay granted options to West pursuant to the Award Agreement.[13] The Award Agreement provides that the options were issued "upon the terms and conditions set forth in the [2016 Option Plan]" and "[s]ubject

---

[9] *Id.*

[10] *Id.*

[11] Compl. Ex. B at 10-11.

[12] *Id.* at 11.

[13] Compl. ¶ 18, Ex. C § 1.

4

to the terms and conditions" of the Award Agreement.[14] The Award Agreement contains a vesting schedule that is generally consistent with the vesting schedule in the Employment Agreement but provides additional details about the forfeiture and repurchase of the options in the event of West's termination.[15] The 2016 Option Plan gives AffiniPay the right to repurchase incentive units acquired through options granted under the 2016 Option Plan at a defined fair market value if West is terminated for any reason.[16]

Disputes related to the Award Agreement are governed by Section 12 of the 2016 Option Plan.[17] Section 12 also includes an arbitration clause:

> Any dispute between [AffiniPay] and [West] as to the interpretation of any provision of the [2016 Option Plan] or [the] Award Agreement or the rights and obligations of any party thereunder . . . will be resolved through binding arbitration as hereinafter provided in Austin, Texas . . . in accordance with the Commercial Arbitration Rules of the [AAA] then in effect.[18]

Section 12 sets out the procedures that would govern any such arbitration.[19]

---

[14] Compl. Ex. C (Preamble), § 1.

[15] *See* Compl. Ex. B § 3(D), Ex. C §§ 2-3.

[16] Compl. Ex. D § 9; *see also id.* § 2 (definitions of "Fair Market Value" and "Repurchase Event").

[17] Compl. ¶ 19, Ex. D § 12.

[18] Compl. Ex. D § 12.

[19] *Id.* § 12(a).

## C. The Rollover Agreement

On February 28, 2020, private equity firm TA Associates acquired a majority interest in AffiniPay.[20] The sale transaction triggered vesting acceleration provisions in the Award Agreement and the Employment Agreement, causing a portion of West's options to vest.[21] In connection with TA Associates' acquisition of AffiniPay, West entered into a Unit Option Rollover Agreement (the "Rollover Agreement") with AffiniPay.[22]

Under the Rollover Agreement, West exchanged his options for new, post-deal options (referred to as the "New Options" in the Rollover Agreement) that would allow West to purchase common units of AffiniPay Parent, LLC.[23] The Rollover Agreement provides that the New Options West received post-rollover would "be governed by the same terms and conditions of the [2016 Option Plan and the Award Agreement]," including with respect to vesting.[24] The Rollover Agreement does not reference the Employment Agreement other than to adopt its

---

[20] Compl. ¶ 20, Ex. A ¶ 5.

[21] Compl. ¶ 20, Ex. A ¶ 5, Ex. B § 3(D), Ex. C § 2.2.

[22] Compl. ¶ 21, Ex. G (Preamble).

[23] Compl. ¶ 21, Ex. G §§ 1-2.

[24] Compl. Ex. G § 2(c). The Rollover Agreement incorporated the terms of the Award Agreement and Options Agreement except "that all references in the [Award Agreement and 2016 Option Plan] to the 'Company' shall be deemed to be references to [AffiniPay Parent, LLC], and upon exercise of any New Option(s), [West] shall be entitled to receive [common units of AffiniPay Parent, LLC]." *Id.*

definition of "Cause."[25] The Rollover Agreement also contains an integration clause providing that it and "the agreements and documents referred to" in it constitute the complete agreement between the parties on its subject matter and supersede any prior understandings or agreements.[26]

### D. The Profit Interest Agreement and 2020 Option Plan

On June 24, 2020, AffiniPay granted West incentive units in AffiniPay Parent, LLC pursuant to a Profit Interest Award Agreement (the "Profit Interest Agreement").[27] The Profit Interest Agreement explains that the units were granted under the Company's 2020 Unit Option and Grant Plan ("2020 Option Plan"), which replaced the 2016 Option Plan post-acquisition, and "subject to the terms and conditions set forth" in the Profit Interest Agreement.[28]

The Profit Interest Agreement contains a vesting schedule for the incentive units.[29] The 2020 Option Plan gives AffiniPay the right to repurchase West's vested units upon his termination at a defined "Fair Market Value" determined in accordance with the 2020 Option Plan.[30]

---

[25] *Id.*

[26] Compl. Ex. G § 7.

[27] Compl. ¶ 22, Ex. E (Preamble).

[28] Compl. Ex. E (Preamble).

[29] Compl. Ex. E § 1.

[30] Compl. Ex. F § 9.

7

The Profit Interest Agreement also contains an arbitration clause in Section 5(j) to govern disputes about the incentive units:

> The parties hereto agree that any dispute or controversy arising out of, relating to, or in connection with [the Profit Interest Agreement] or the transactions contemplated hereby shall be arbitrated pursuant to the Delaware Rapid Arbitration Act, 10 *Del. C*. § 5801 et seq.[31]

Section 5(j) goes on to outline other terms and procedures to govern any arbitration, including that the arbitration "shall be conducted in accordance with the Delaware Rapid Arbitration Rules."[32]

### E.    The Arbitration

On March 3, 2021, AffiniPay terminated West and provided him with a proposed separation agreement.[33]  The separation agreement identified the number of West's options that AffiniPay claims had vested and informed West that AffiniPay was electing to repurchase his incentive units at their "Fair Market Value."[34]  West disputed AffiniPay's calculation of the number of options that had vested and AffiniPay's valuation of his incentive units.[35]  He refused to sign the separation agreement and asserted that he was entitled to more than double the number of vested options under his interpretation of the vesting provisions in the

---

[31] Compl. Ex. E § 5(j).

[32] *Id.*

[33] Compl. ¶ 24, Ex. A ¶¶ 9, 10, 16.

[34] Compl. ¶ 24.

[35] *Id*. ¶ 25; *see* Compl. Ex. A ¶¶ 18-21.

Award Agreement and to a higher value for his incentive units.[36] AffiniPay responded that it viewed the vesting calculation to be consistent with the terms of the Award Agreement, 2016 Option Plan, and Rollover Agreement and the determination of "Fair Market Value" to be consistent with the terms of the Profit Interest Agreement and 2020 Option Plan.[37] West did not respond and the separation agreement went unsigned.

On May 11, 2021, West filed a demand for arbitration in Austin, Texas pursuant to the Employment Arbitration Rules of the AAA (the "Arbitration").[38] West brings five claims in the Arbitration, two of which are relevant here. First, West asserts a breach of contract claim against AffiniPay (Count 4), alleging that AffiniPay "breached [the Employment Agreement] by refusing to place the appropriate value on West's [options] and by attempting to manipulat[e] his vesting schedule to deprive him of additional options."[39] Second, West asserts a fraud claim against AffiniPay (Count 5), alleging that "AffiniPay committed fraud by manipulating a vesting schedule."[40] The allegations in West's Summary of Claim seem to concern both the vesting schedule of his rolled-over New Options and the

---

[36] Compl. ¶ 25.

[37] *Id.* ¶ 26.

[38] *Id.* ¶ 27.

[39] Compl. Ex. A ¶¶ 36-39.

[40] *Id.* ¶¶ 40-41.

value of the incentive units AffiniPay had elected to buy back.[41]  During oral argument in this action, West's attorney argued that West only intended to bring claims pursuant to the Employment Agreement.[42]

### F.  Procedural Posture

On June 22, 2021, AffiniPay filed this action seeking declaratory and injunctive relief to prevent West from arbitrating his equity-related claims in the Arbitration.  AffiniPay filed a motion for a preliminary injunction on the same day. On July 2, 2021, the court approved a stipulation between the parties staying the pending Arbitration until September 19, 2021.[43]  On July 26, 2021, West moved to dismiss the complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, "to stay this action pending the . . . arbitrator's determination of [the issue of] arbitrability."[44]  The court heard argument on both the motion for a preliminary injunction and motion to dismiss on August 19, 2021.[45]

## II.  LEGAL ANALYSIS

This decision must address two issues.  First, I must determine whether the court has subject matter jurisdiction to decide the issue of substantive arbitrability.

---

[41] *Id.* ¶¶ 16, 20-21.

[42] Oral Arg. Tr. 34 (Dkt. 38).

[43] Dkt. 19.

[44] Dkt. 26.

[45] Dkt. 36.

If the issue of substantive arbitrability rests in this court, rather than with the arbitrator, I must assess whether AffiniPay is entitled to an injunction to prevent the equity-based claims from being heard in the Arbitration.

Court of Chancery Rule 12(b)(1) governs the first question. "In considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court must address the nature of the wrong alleged and the remedy sought to determine whether a legal, as opposed to an equitable, remedy is available and adequate."[46] "If a claim is arbitrable, *i.e.*, properly committed to arbitration, this Court lacks subject matter jurisdiction because arbitration provides an adequate legal remedy."[47]

The second question must be evaluated under the standard for a preliminary injunction. To obtain a preliminary injunction, the moving party "must demonstrate (i) a reasonable probability of success on the merits; (ii) a threat of irreparable injury if an injunction is not granted; and (iii) that the balance of the equities favors the issuance of an injunction."[48]

For the reasons discussed below, I find that both questions must be answered in the affirmative. Because the contracts at issue have conflicting dispute resolution

---

[46] *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009).

[47] *Id.*

[48] *Pell v. Kill*, 135 A.3d 764, 783 (Del. Ch. 2016).

provisions, the court—rather than the arbitrator—must decide the question of substantive arbitrability. Subject matter jurisdiction is therefore proper in this court. An analysis of those same contracts, which are implicated by West's equity-based claims and contain separate arbitration provisions, also leads me to conclude that the Arbitration must be enjoined.

### A. This Court Has Subject Matter Jurisdiction to Decide Substantive Arbitrability.

#### 1. Substantive Arbitrability Generally

Substantive arbitrability is the question of whether a dispute is within the scope of an arbitration provision and, therefore, subject to arbitration.[49] Delaware courts follow the "general rule, announced by the United States Supreme Court . . . that courts should decide" the issue of substantive arbitrability.[50] That rule has an important exception: when parties delegate issues of arbitrability to an arbitrator, "a court . . . possesses no power to decide the arbitrability issue."[51] For that exception to apply, however, there must be clear and unmistakable evidence that the parties intended to delegate issues of arbitrability to an arbitrator.[52] That is so "even if the

---

[49] *UPM-Kymmene Corp. v. Renmatix, Inc.*, 2017 WL 4461130, at *4 (Del. Ch. Oct. 6, 2017).

[50] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006).

[51] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

[52] *See Willie Gary*, 906 A.2d at 78; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (explaining that "[c]ourts should not assume that the parties agreed to

12

court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."[53]

The Federal Arbitration Act (FAA) governs disputes over the arbitrability of contracts involving interstate commerce.[54] The FAA, in turn, implicates state law contract principles. "When deciding whether the parties agreed to arbitrate . . . [the issue of] arbitrability" under the FAA, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[55]

In *Willie Gary*, the Delaware Supreme Court explained that contractual parties' "clear and unmistakable intent" to submit arbitrability issues to an arbitrator is found "where the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower[s] arbitrators

---

arbitrate [the issue of] arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so").

[53] *Henry Schein*, 139 S. Ct. at 529.

[54] 9 U.S.C. § 2.

[55] *See First Options*, 514 U.S. at 940; *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 288 (3d Cir. 2010), as amended (Dec. 7, 2010).

to decide arbitrability."[56]  Delaware courts routinely apply *Willie Gary* in resolving a question of substantive arbitrability.[57]

The analysis becomes complicated when the court is faced with multiple agreements providing for dispute resolution in different arbitral forums.  This court has cautioned that the *Willie Gary* framework should not be applied "reflexively in the multiple-contract scenario."[58]  Rather, if various contracts are implicated in a claim and those contracts diverge on the matter of arbitral dispute resolution, *Willie Gary*'s requirement that a provision mandate the arbitration of "*all* disputes" is impossible to satisfy.[59]  It then falls to the court to determine substantive

---

[56] 906 A.2d 76, at *80.  In *McLaughlin v. McCann*, then-Vice Chancellor Strine added a third consideration before a court will resolve substantive arbitrability: that there be "essentially no non-frivolous argument about [issues of] . . . arbitrability to make before the arbitrator."  942 A.2d 616, 627 (Del. Ch. 2008).  The United States Supreme Court's decision in *Henry Schein* renders that consideration a nullity.  In *Henry Schein*, the Court explained that a court cannot rule on the merits of an underlying claim, even if the claim appears frivolous to the court, when parties clearly delegate the issue of substantive arbitrability to an arbitrator.  *Henry Schein*, 139 S. Ct. 529.

[57] *See UPM-Kymmene*, 2017 WL 4461130, at *4 n.29 (collecting cases).

[58] *Id*. at *6.

[59] *TowerHill Wealth Mgmt, LLC v. Bander Fam. P'ship*, 2008 WL 4615865, at *3 (Del. Ch. Oct. 9, 2008) ("[W]here there are various dispute resolution clauses in play in various contracts, it is impossible to select one and say it applies generally to all disputes.").

arbitrability.[60]   That is so even where the dispute resolution provisions reserve questions of arbitrability for the arbitrator.[61]

Then-Chancellor Bouchard's decision in *UPM-Kymmene Corp. v. Renmatix Inc.* is instructive.   There, the parties entered into two contracts with conflicting arbitration clauses.   Both clauses empowered an arbitrator to decide issues of arbitrability, but the first contract called for resolution before the International Chamber of Commerce (ICC) and the second contract contemplated arbitration before the AAA.[62]   The first contract's arbitration clause governed all disputes between the parties.[63]   The second contract's arbitration clause governed all disputes under the second contract.[64]   Although the party demanding arbitration in *UPM* asserted its claims before the AAA under the second contract, the court found that both agreements—which were intended to operate concurrently—were in play.[65] Faced with dueling arbitration clauses, the court could not conclude that there was a "clear and unmistakable intention . . . that the parties wished to have one arbitrator

---

[60] *See id*. at *3 (explaining that the court has jurisdiction to decide issues of substantive arbitrability where an arbitration was brought under one contract but claims implicated other contracts that mandated dispute resolution by the court).

[61] *UPM-Kymmene*, 2017 WL 4461130, at *7.

[62] *Id*. at *2.

[63] *Id*.

[64] *Id*.

[65] *Id*. at *5-7.

rather than the other determine where the Demands should be arbitrated."[66]  The

issue of arbitrability was therefore left for the court to decide.

### 2. Substantive Arbitrability in This Case

As in *UPM*, this court must assess whether the relevant contracts evidence

the parties' clear and unmistakable intent to submit substantive arbitrability to the

arbitrator.  The initial question is whether there are multiple contracts at issue.  West

asserts that his breach of contract and fraud claims in the Arbitration are brought

only under the Employment Agreement.[67]  That is so, West argues, because he seeks

to remedy AffiniPay's alleged violation of the Employment Agreement by

undervaluing his shares and manipulating the relevant vesting schedule after his

termination.[68]  If the Arbitration concerns only the Employment Agreement as he

claims, then under *Willie Gary*, the dispute resolution provision in the Employment

---

[66] *Id*. at *7.

[67] Def.'s Opp. Br. at 39 (Dkt. 27).

[68] *Id*. at 38-39.  In further support of his argument, West cites several cases that he says are examples of courts following the *Willie Gary* test and deferring issues of arbitrability to arbitrators.  *See* Pls.' Opening Br. at 32-37, 40-43 (Dkt. 22) (citing *Celestialrx Invs., LLC v. Krivulka*, 2019 WL 1396764 (Del. Ch. Mar. 27, 2019); *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783 (Del. Ch. Mar. 30, 2020); *Dewey v. Amazon.com, Inc.*, 2019 WL 3384769 (Del. Super. Ct. July 25, 2019); *Blackmon v. O3 Insight, Inc.*, 2021 WL 868559 (Del. Ch. Mar. 9, 2021)).  There is a fundamental difference between the facts at issue in those disputes and this case: none address dueling arbitration clauses.  This court's decision in *Celestialrx* comes the closest.  There, the parties entered into multiple agreements with differing arbitration clauses, but the court found that only one arbitration clause was implicated by the claims.  Here, West's claims implicate at least two (maybe three) different arbitration clauses.

16

Agreement would mandate that arbitrability be addressed in arbitration under the Employment Arbitration Rules of the AAA.[69]  The pending Arbitration is being conducted in accordance with those rules.[70]

AffiniPay, for its part, argues that West's claims cannot be decided without also considering the 2016 Option Plan and Profit Interest Agreement.[71]  The Employment Agreement, 2016 Option Plan, and Profit Interest Agreement each contain a dispute resolution provision empowering a different arbitrator to determine arbitrability.[72]  As a result, AffiniPay contends, there is no clear and unmistakable evidence that the parties intended for one particular arbitrator to decide that issue.[73]

After reviewing the relevant contracts, I conclude that AffiniPay has the better of the arguments.  West is correct that the dispute resolution provision in the Employment Agreement evidences the clearest intent of the parties to submit the issue of substantive arbitrability to the arbitrator.  It provides that "any and all disputes" arising out of the Employment Agreement or concerning West's employment or termination from AffiniPay must be settled by arbitration under the

---

[69] Compl. Ex. B at 11.  The AAA Employment Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction."  AAA Empl. Proc. Rule R–6.

[70] Def.'s Opp. Br., Ex. 3 at 1.

[71] Pls.' Opening Br. at 15 (Dkt. 22).

[72] Compl. Ex. B at 10-11, Ex. D § 12, Ex. E § 5(j).

[73] Pls.' Opening Br. at 16.

AAA Employment Arbitration Rules, including "any disagreement as to whether a dispute is arbitrable under the [Employment Agreement]."[74] If the Employment Agreement was the only contract relevant to West's equity-based claims, the *Willie Gary* test would apply for the reasons discussed above.

But there are other relevant contracts that contain conflicting dispute resolution provisions, making that conclusion impossible. The parties agreed in Section 3(D) of the Employment Agreement that West's options would be awarded "subject to all other terms and conditions set forth in the [2016] Option Plan and the [Award Agreement]."[75] In other words, even if West's equity claims in the Arbitration are viewed narrowly to concern his options granted under the Award Agreement, the terms of the 2016 Option Plan must be considered.

Both the Employment Agreement and 2016 Option Plan contemplate arbitration before the AAA in Austin, Texas.[76] But they adopt different arbitration rules: the AAA Employment Arbitration Rules in the Employment Agreement, and the AAA Commercial Arbitration Rules in the 2016 Option Plan.[77] Although both sets of rules delegate the issue of substantive arbitrability to the arbitrator, the rules

---

[74] Compl. Ex. B at 11.

[75] Compl. Ex. B § 3(D).

[76] Compl. Ex. B at 10-11, Ex. D § 12.

[77] *Id.*

are not identical.[78] In application, the rules could lead to different results, for example, in the selection of an arbitrator with particular expertise or in the procedures that would apply.

The dispute resolution provision in a third agreement that may be relevant—the Profit Interest Agreement—creates more uncertainty. As described in the next section of this decision, the valuation allegations in West's breach of contract claim could be read to arise, at least in part, out of the Profit Interest Agreement.[79] That agreement contains a dispute resolution provision that mandates arbitration under the Delaware Rapid Arbitration Act.[80] The Delaware Arbitration Rules also provide that the arbitrator has the authority "to resolve, finally and exclusively, any dispute of substantive or procedural arbitrability."[81]

The "policy that favors alternative dispute resolution mechanism, such as arbitration, does not trump basic notions of contract interpretation."[82] Faced with two (perhaps three) dispute resolution clauses that are in tension, it is impossible to discern which arbitrator (and which rules) the parties intended would determine the

---

[78] *See generally* AAA. Com. Rules; AAA Empl. Proc. Rules.

[79] *See infra* Section II.B.1.b.

[80] Compl. Ex. E § 5(j); *see* 10 *Del. C.* § 5703(b).

[81] *See* Del. Rapid Arb. R. 6.

[82] *Hough Assoc., Inc. v. Hill*, 2007 WL 148751, at *13 (Del. Ch. Jan. 17, 2007) (quoting *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002)).

matter of arbitrability. There is no clear and unmistakable evidence that the parties intended to delegate substantive arbitrability to an arbitrator under the AAA Employment Arbitration Rules, as West has done. This court, rather than the arbitrator, must decide the issue of substantive arbitrability.[83]

**B.    The Arbitration Must Be Enjoined as to West's Equity Claims.**

Because subject matter jurisdiction is proper in this court,[84] the remaining question is whether West's equity claims are subject to arbitration under the dispute resolution provision in the Employment Agreement. AffiniPay seeks a preliminary injunction preventing West from pursing in the Arbitration any claims about the vesting schedule applicable to West's options in AffiniPay or the fair market value of West's incentive units.[85] I conclude that because AffiniPay has satisfied the standard for a preliminary injunction, West must be preliminarily enjoined from pursuing claims related to those issues in the pending Arbitration.

1.    Reasonable Probability of Success on the Merits

AffiniPay's complaint seeks injunctive relief and a declaratory judgment that West must pursue his claims about the vesting schedule applicable to his AffiniPay options in an arbitration that complies with Section 12 of the 2016 Option Plan and

---

[83] *See UPM-Kymmene*, 2017 WL 4461130, at *7.

[84] The court also has subject matter jurisdiction to order a preliminary injunction related to the Arbitration. *See* 10 *Del. C.* § 341; 10 *Del. C.* § 5804(b); *see also Eastman Kodak Co. v. Cetus Corp.*, 1991 WL 202184, at *2 (Del. Ch. Oct. 4, 1991).

[85] Dkt. 3.

about the valuation of his incentive units in an arbitration that complies with Section 5(j) of the Profit Interest Award.[86] West contends that his claims arise only from the Employment Agreement and that, as the claimant in the Arbitration, he is entitled to that narrow framing.[87]

A review of West's claims belies his position. First, West's equity-based allegations in the Arbitration are about the options he was originally promised pursuant to the Employment Agreement. West's Summary of Claim in the Arbitration accuses AffiniPay of manipulating the vesting schedule for his New Options post-rollover.[88] Those allegations go to West's breach of contract claim (Count IV) that AffiniPay has "attempt[ed] to manipulate his vesting schedule to deprive him of additional options" and his fraud claim (Count V) that AffiniPay "manipulat[ed] a vesting schedule for which there was no consideration."[89] I will refer to West's claims about manipulation of his vesting schedule as the "Vesting Claim." West's Summary of Claim also challenges AffiniPay's valuation of the incentive units he was awarded after the sale transaction as being below fair value.[90] Those allegations pertaining to his claim in Count IV that AffiniPay has "refus[ed]

---

[86] Compl. ¶ 40.

[87] Def.'s Opp. Br. at 39.

[88] Compl. Ex. A ¶¶ 19, 20.

[89] *Id*. ¶¶ 38, 41.

[90] *Id*. ¶ 21.

to place the appropriate value on West's stock."[91]  I will refer to that claim as the "Valuation Claim."

### a. The Vesting Claim

With regard to West's Vesting Claim, I begin—as I must—with a review of the Employment Agreement.  The Employment Agreement is governed by Texas law,[92] which, like Delaware law, requires courts to "afford common words their plain meaning unless context indicates the word are used in another sense."[93]  A court must "consider the entire agreement in an effort to harmonize and give effect to all provisions so that none are rendered meaningless."[94]

The Employment Agreement contains a broad arbitration provision applying to "all disputes or claims arising out of or relating to th[at] Agreement."[95]  But, in determining whether AffiniPay has a reasonable probability of showing that the Vesting Claim is not properly raised in the Arbitration, the plain language of Section 3(D) cannot be ignored.  Section 3(D) says that West "will be granted an option" and contains a vesting schedule but unambiguously states that the option will be "subject to all other terms and conditions set forth in the [2016] Option Plan and the

---

[91] *Id.* ¶ 38.

[92] Compl. Ex. B at 10-11 ("The laws of the State of Texas shall govern this agreement.").

[93] *N. Nat. Gas Co. v. Oneok Bushton Processing, Inc.*, 2012 WL 4364652, at *2 (Tex. App. Sept. 25, 2012).

[94] *Id.*

[95] Compl. Ex. B at 10-11.

22

[Award Agreement]."[96]  Moreover, the Employment Agreement states that if there is any conflict between Section 3(D) and the 2016 Option Plan or Award Agreement the terms of the latter "shall control."[97]

It is reasonable to interpret those provisions as evidencing the parties' intent that the Award Agreement granting the options and the 2016 Option Plan providing the terms for the grant would govern the option West was promised in the Employment Agreement. The Award Agreement contains a detailed vesting schedule and explains that the options will "vest and [be] exercisable only in accordance with the conditions stated in" Section 2 of the Award Agreement.[98]  The Award Agreement also provides that the options were granted "[p]ursuant to the provisions of the [2016 Option Plan]."[99]

The 2016 Option Plan is subject to Delaware law.[100]  "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[101]  This court

---

[96] Compl. Ex. B § 3(D).

[97] *Id.*

[98] Compl. Ex. C § 2.

[99] *Id.* (Preamble).

[100] Compl. Ex. D § 11 ("[The 2016 Option Plan] shall be subject to the governing law provision set forth in the LLC Agreement."); Konstanzer Decl. Ex. 1 (2015 AffiniPay Holdings LLC Agreement) § 12.16 (applying Delaware law).

[101] *Salamone v. Gorman*, 106 W.3d 354, 367-68 (Del. 2014).

will review an agreement as a whole and give effect to each term and provision "so as not to render any part of the contract mere surplusage."[102] The 2016 Option Plan contains an arbitration clause requiring that "[a]ny dispute . . . as to the interpretation of any provision of the [2016 Option Plan] or [the] Award Agreement or the rights and obligations of any party thereunder" be arbitrated under the AAA Commercial Arbitration Rules.[103] In construing each of the relevant agreements, there is a reasonable basis to conclude that parties intended that claims about West's options would be adjudicated under that provision.

The subsequent rollover of West's options confirms that AffiniPay may ultimately be able to demonstrate that the dispute resolution provision in the 2016 Option Plan applies to West's Vesting Claim. The Rollover Agreement, which is subject to Delaware law, provides that West's AffiniPay options would be exchanged into New Options to purchase parent units at the closing of the sale transaction.[104] The Rollover Agreement explains that those New Options are "governed by the same terms and conditions of the [Award Agreement and 2016 Option Plan]."[105] If that is the case, the Vesting Claim must be resolved in arbitration under the AAA Commercial Arbitration Rules, as the 2016 Option Plan requires.

---

[102] *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[103] Compl. Ex. D § 12.

[104] Compl. Ex. G §§ 1-2, 7.

[105] *Id*. § 2.

### b. The Valuation Claim

Because West's Valuation Claim is styled as one for breach of the Employment Agreement, my analysis again begins with that contract. Section 3(D) of the Employment Agreement concerns an option to purchase incentive units which, if vested, AffiniPay could repurchase "in accordance with the terms of the [2016] Option Plan and [A]ward [A]greement."[106] There is no provision for valuation of incentive units in the Employment Agreement. Even if there was, the units at issue in the Valuation Claim were—according to West's arbitration claim—"new options (issued at the TA transaction)."[107]

Based on West's description of those units, the Valuation Claim concerns the New Options issued post-rollover. In that case, the dispute resolution of the 2016 Option Plan—not the Employment Agreement—would be relevant. AffiniPay would establish reasonable probability of success on the merits of its claim that the Valuation Claim is improperly in the Arbitration for the reasons discussed above.

AffiniPay contends that the Profit Interest Agreement and the 2020 Option Plan are, instead, the proper agreements that must be considered to resolve the Valuation Claim.[108] That is so, AffiniPay argues, because the Valuation Claim

---

[106] Compl. Ex. B § 3(D), Ex. D § 9.

[107] Compl. Ex. A ¶ 21.

[108] Pls.' Opening Br. at 22-23.

concerns a dispute about whether AffiniPay ascribed "fair value" to the incentive units awarded in July 2020 that it sought to repurchase upon West's termination.[109] AffiniPay granted West those incentive units "subject to the terms and conditions set forth" in the Profit Interest Agreement and the 2020 Option Plan.[110] The 2020 Option Plan affords AffiniPay the right to repurchase West's vested incentive units upon his termination at their "Fair Market Value."[111] "Fair Market Value" is a term defined in the 2020 Option Plan as being, in relevant part, "based on the reasonable application of a reasonable valuation method not inconsistent with Section 409A of the [Tax] Code, including a valuation conducted by an independent valuation firm."[112]

West's Valuation Claim could be read to address those provisions of the 2020 Option Plan. West's Summary of Claim in the Arbitration alleges that "AffiniPay would prefer to set the fair value at the January 2011 409A valuation of 1.91 per share or $751M total."[113] He further alleges that a valuation by Lazard "placing the value at ~$1.4B" is more accurate.[114]

---

[109] Compl. ¶¶ 22, 24-26, Ex. A ¶¶ 21, 38.

[110] Compl. Ex. E (Preamble).

[111] Compl. Ex. F § 9.

[112] *Id.* § 1.

[113] Compl. Ex. A ¶ 21.

[114] *Id.*

There is also a definition of "Fair Market Value" in the 2016 Option Plan providing that the determination of value "shall be made in good faith by [AffiniPay] in compliance with Section 409A."[115] I cannot conclude at this phase that the 2016 Option Plan is irrelevant to the Valuation Claim. Perhaps provisions in both the 2016 Option Plan and 2020 Option Plan apply. Regardless, it is reasonably likely that the Profit Interest Agreement, rather than the Employment Agreement, governs at least some of the incentive units at issue in the Arbitration.[116] The Profit Interest Agreement, which is governed by Delaware law, provides that those units were granted to West "subject to the terms and conditions" in the Profit Interest Agreement, the 2020 Option Plan, and AffiniPay's LLC Agreement.[117] The Profit Interest Agreement contains an arbitration clause requiring "that any dispute or controversy arising out of, relating to, or in connection with" that agreement or the transactions it contemplates must be arbitrated under the DRAA.[118]

---

[115] Compl. Ex. D § 2.

[116] Even if only the 2016 Option Plan was relevant, the Employment Agreement would not be at issue in the Valuation Claim.

[117] Compl. Ex. E at 1; *id*. § 5(e) ("This Agreement shall be governed by and construed in accordance with the Delaware Limited Liability Company Act as to matters within the scope thereof, and as to all other matters shall be governed and construed in accordance with the internal laws of the State of Delaware . . . ."); Konstanzer Decl. Ex. 1 (2015 AffiniPay Holdings LLC Agreement) § 12.16 (applying Delaware law).

[118] Compl. Ex. E § 5(j).

In short, I do not read the Valuation Claim to concern any of the rights and obligations provided for in the Employment Agreement. Under the court's reasoning in *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, if a claim does not address any of the rights and obligations provided for in an underlying agreement, then the claim is beyond the reach of the underlying agreement's arbitration clause.[119] The Valuation Claim therefore may be beyond the scope of the Employment Agreement's arbitration clause.

The subject matter of the Valuation Claim suggests that the 2016 Option Plan's arbitration clause, and possibly the Profit Interest Agreement's dispute resolution provision, will control. I need not make that ultimate determination at the present stage. The relevant issue for AffiniPay's preliminary injunction motion is whether AffiniPay is reasonably likely to prevail in demonstrating that the pending Arbitration is an inappropriate forum to arbitrate the Vesting and Valuation Claims. AffiniPay has made that showing.

---

[119] 817 A.2d 149, 156 (Del. 2002); *see also Chandler v. Ciccoricco*, 2003 WL 21040185, at \*15 n.65 (Del. Ch. May 5, 2003) (denying the enforcement of an arbitration provision because the claims did not arise out of the underlying agreement); *Seven Hills Com., LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706 (Tex. App. 2014) (holding that courts will not enforce an agreement's arbitration provisions unless the claims arise out of or relate to the underlying agreement).

## 2. Threat of Irreparable Injury

AffiniPay has also demonstrated that it faces irreparable harm if the Vesting Claim and Valuation Claim go forward in the pending Arbitration. "Delaware courts have consistently found that threatened, wrongful enforcement of an arbitration clause constitutes sufficient irreparable harm to justify an injunction."[120] West asserts that AffiniPay faces no risk of harm because it agreed to arbitrate before the AAA pursuant to the Employment Arbitration Rules.[121] But if AffiniPay's interpretation of the relevant contracts is correct, the Arbitration would effectively strip it of the dispute resolution procedures it bargained for in the 2016 Option Plan and Profit Interest Award. To force AffiniPay to proceed with the Arbitration, pursuant to the Employment Arbitration Rules, "involves a quantum of irreparable harm that outweighs the risk of improvidently granting a preliminary injunction."[122]

## 3. Balance of the Equities

The balance of the equities also favors the issuance of an injunction barring West from pursuing the Vesting Claim and Valuation Claim in the Arbitration. If the court does not grant an injunction, AffiniPay may be subjected to arbitral rules in an arbitral forum that it never agreed to. West argues that if injunctive relief is granted, he will be "deprived of the mutual covenants that both parties made when

---

[120] *Brown v. T-Ink, LLC*, 2007 WL 4302594, at *16 (Del. Ch. Dec. 4, 2007).

[121] Def.'s Opp. Br. at 44-45.

[122] *Angus v. Ajio, LLC*, 2016 WL 2894246, at *1 (Del. Ch. May 13, 2016).

entering into the Employment Agreement."[123]  If AffiniPay's arguments ultimately bear out, however, the parties' agreements will be honored.  Moreover, West will not be prevented from pursuing his equity-based claims against AffiniPay.  He simply would be required to pursue them in the forum and subject to the rules the parties contracted for.  Neither party would be forced to arbitrate under procedures inconsistent with the parties' arbitration agreements.

### 4.    Bond

Under Court of Chancery Rule 65(c), the court must impose a bond when granting a preliminary injunction.[124]  The bond is to be "in such sum as the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."[125]

Only AffiniPay makes any argument about the appropriate amount of a bond, contending that a nominal bond of $1.00 should be imposed.[126]  West has no response.  Because West does not appear to face cognizable harm from the issuance of a limited preliminary injunction and has not set forth any argument that would

---

[123] Def.'s Opp. Br. at 46.

[124] Ct. Ch. R. 65(c).

[125] *Id.*

[126] Pls.' Opening Br. at note 6.

support the imposition of a significant bond, I conclude that a nominal bond of $1,000 is appropriate.[127]

## III.  CONCLUSION

For the reasons described above, West's motion to dismiss for lack of subject matter jurisdiction is denied.  Because AffiniPay has shown a reasonable probability of success on the merits, a sufficient threat of irreparable injury, and that the balance of the equities favors the issuance of an injunction, AffiniPay's motion for preliminary injunction is granted.  West is preliminarily enjoined from pursuing in the Arbitration claims relating to the vesting schedule applicable to his AffiniPay options or the fair value of his incentive units, including the Vesting Claim and Valuation Claim.

---

[127] In *Rodgers v. Bingham*, the court set a "nominal bond" of $1,000 where the defendant "did not set forth any facts of record or any realistic theory" to support a significant bond. C.A. No. 2017-0314-AGB, at 96 (Del. Ch. June 1, 2017) (TRANSCRIPT).  In *Angus v. Ajio, LLC*, the parties agreed to a bond in the amount of $1,000 where the court preliminary enjoined an arbitration.  C.A. No. 11895–VCG (Del. Ch. April 4, 2016) (Dkt. 44).