**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

December 28, 2021

Rudolf Koch, Esquire
Daniel Kaprow, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Kenneth Nachbar, Esquire
Alexandra Cumings, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

RE: *Daryl Hagler v. Evolve Acquisition LLC, et al.*
C.A. No. 2021-0431-SG

Dear Counsel:

This litigation is before me on a Motion to Dismiss (the "Motion") by Defendant Evolve Growth Initiatives, LLC ("Defendant EGI") citing lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1). Defendant EGI[1] first filed an arbitration (the "Arbitration") in March of this year[2] relating to certain indemnities for breaches of representations and warranties stemming from a Membership Interest Purchase Agreement (the "Purchase Agreement"), by and

---

[1] Co-defendant Evolve Acquisition LLC did not join in the motion.
[2] The Complaint refers to the arbitration's filing as of "March 18, 2019," but the original arbitration demand, which is before me, references a date of March 18, 2021. *See* Letter to the Honorable Sam Glasscock III from Rudolf Koch dated Sept. 9, 2021, regarding Arbitration Demands, Ex. A, at 17 [hereinafter "Original Arbitration Demand"].

between, among others, the Plaintiff Hagler and Defendant EGI.[3]  Hagler then filed

this action in May 2021, which EGI concludes was meant to preempt the

Arbitration.  Defendant EGI's position is that the Plaintiff's claims must be

dismissed, as they must be pled in connection with the first-filed Arbitration,

because the parties' agreement to arbitrate in the Purchase Agreement deprives me

of jurisdiction.  Any doubts about arbitrability, it avers, are matters for the

arbitrators, and not this Court.

Delaware's jurisprudence in this realm does not represent, at least, a

hobgoblin of little minds.  Our caselaw makes clear that the right to arbitration is

only so broad as the contractual agreement between parties to a dispute.[4]

Nonetheless, Delaware policy strongly supports resolution of disputes by

arbitration, with doubts concerning arbitrability resolved in favor of arbitration.[5]

Questions of arbitrability—that is, substantive arbitrability—are matters for the

court, not the arbitrator.[6]  But this latter precept is overcome where the parties

---

[3] Verified Compl. for Declaratory J., Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing, ¶¶ 40, 35, 6, Dkt. No. 1 [hereinafter "Compl."].

[4] *See McLaughlin v. McCann*, 942 A.2d 616, 622 (Del. Ch. 2008) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[5] *Id.* at 621 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

[6] *Id.* at 621–22 (citation omitted) ("In applying those traditional state contract law principles to make a determination on substantive arbitrability . . . '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.").

clearly indicate in their contract that arbitrability is for the arbitrator.[7] Delaware law follows federal arbitration law,[8] and the majority federal rule is that, where parties have contractually adopted comprehensive rules that provide that arbitrability is for the arbitrator—for instance, the American Arbitration Association ("AAA") rules—the parties have thereby sufficiently demonstrated their agreement to submit arbitrability to the arbitrator, and not the court.[9] Delaware embraces the minority view, however, that something more than adoption of the AAA rules is needed to make "clear and unmistakable" that the parties wished an arbitrator to address substantive arbitrability.[10] That something more includes a broad contractual reference of issues to an arbitrator; thus, including a contractual carve-out for a court to exercise equitable jurisdiction, for instance, may be sufficient to cast doubt on the parties' intentions, and throw the threshold arbitrability question back to the court.[11] Nonetheless, simply adopting the AAA rules raises a strong presumption that the parties intended substantive

---

[7] *See id.*

[8] I note that federal arbitration law is followed by Delaware courts where the Delaware Uniform Arbitration Act is not specifically referenced in the subject document. *See* 10 *Del. C.* § 5702. The parties do not dispute whether the Delaware Uniform Arbitration Act is applicable here.

[9] *See id.*; *see generally Willie Gary, LLC v. James & Jackson, LLC*, 2006 WL 75309 (Del. Ch. Jan. 10, 2006).

[10] *McLaughlin*, 942 A.2d at 622–23.

[11] *See, e.g., James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006).

arbitrability for the arbitrator, not the court.[12]  And where substantive arbitrability is for the arbitrator, a court may not dismiss even a frivolous claim of arbitrability, but must submit the matter for arbitration.[13]

With this guidance in mind, I find that the arbitrability of the issues raised in the Plaintiff's Complaint must be referred to an arbitrator, for the reasons below.

1. Background Facts

The facts underlying the instant Motion, as well as the Arbitration, largely arise from the text of the Purchase Agreement.[14]  The identities of each of the parties in the contexts of the Purchase Agreement, the Arbitration and this instant action are somewhat complex.

Defendant EGI was the target company under the Purchase Agreement.[15] As a limited liability company, Defendant EGI had three members, each a Seller under the Purchase Agreement.[16]  The Sellers are not party to this suit.[17]

---

[12] *McLaughlin*, 942 A.2d at 625 (referencing the "heavy presumption" that referencing the AAA Rules suggests an agreement between the parties that an arbitrator, not a court, should resolve disputes about substantive arbitrability).

[13] *Henry Schein, Inc. v. Archer & White Sales*, 139 S. Ct. 524, 529 (2019).

[14] I note that, while the Purchase Agreement appears to have been amended three times, I only have the text of the Purchase Agreement itself and the text of its third amendment available to me.  No party has argued that either of the first or second amendment contained different operative language, so I assume without deciding that I can rely on the text of the Purchase Agreement as amended by the third amendment.

[15] *See* Opening Br. Supp. of Def. Evolve Growth Initiatives, LLC's Mot. to Dismiss Verified Compl., Ex. A, at 1, Dkt. No. 7 [hereinafter "Purchase Agreement"].

[16] *See* Purchase Agreement, at Annex I.

[17] *See generally* Compl.

The Plaintiff here is Daryl Hagler, the Sellers' Representative under the Purchase Agreement.[18]

The Arbitration was brought by Defendant EGI and two associated entities not parties to this litigation against Hagler and the Sellers.[19]

Defendant Evolve Acquisition LLC merged into Defendant EGI and is the other named defendant in this litigation.[20]

Defendant EGI, Plaintiff Hagler, the Sellers, and Defendant Evolve Acquisition LLC are the parties to the Purchase Agreement.[21]

Under the Purchase Agreement, Evolve Acquisition LLC bought all of the membership interests in EGI belonging to each of the three Sellers.[22] The Purchase Agreement provided for a $10 million indemnification escrow account.[23] The overwhelming majority of this money remains in escrow as of the date of the Complaint and was due to be released in two installments on March 19, 2021 and December 19, 2021.[24] Just prior to the March date, Defendant EGI and its counsel

---

[18] *See id.* at 1.
[19] *See* Opening Br. Supp. of Def. Evolve Growth Initiatives, LLC's Mot. to Dismiss Verified Compl. 1, 3, Dkt. No. 7 [hereinafter "OB"]; *see also* Compl. ¶ 40 (identifying the arbitration proceeding as ongoing but not identifying all pertinent parties).
[20] *See generally* Compl.; *see also* OB 3. Evidently, Defendant EGI and Evolve Acquisition LLC have merged since the performance of the Purchase Agreement. This is pled in the papers, but the background facts provided do not explain the process by which these entities became one and the same.
[21] *See* Purchase Agreement, at 1.
[22] *See generally id.*
[23] *See* Compl. ¶ 29.
[24] *Id.* ¶ 34.

sent a letter claiming that certain financial figures in connection with the Purchase Agreement were improperly calculated and "intentionally inflated."[25]  On March 18, 2021, Defendant EGI filed its arbitration proceeding seeking indemnification with respect to the financial figures, which purportedly affected the purchase price paid under the Purchase Agreement, and certain "Other Losses."[26]

Section 9 of the Purchase Agreement deals with indemnification for a number of claims that could arise under the agreement and the procedure for so proceeding with indemnification claims.[27]  Section 9.2 indicates that the Sellers were responsible for indemnifying the purchaser (Evolve Acquisition LLC) and its affiliates "in respect of any Losses which [Evolve Acquisition LLC and its affiliates] may suffer as a result of, in connection with or relating to any of" fourteen various enumerated types of claims.[28]  Among the types of indemnifiable claims listed are claims arising from any breach or inaccuracy in any representation or warranty, and any claim arising from the calculation of the purchase price.[29]  Per Defendant EGI's briefing, the claims brought in the Arbitration are due indemnification under this provision, as they fit into one or more of the enumerated categories.[30]

---

[25] *See id.* ¶ 35.
[26] *Id.* ¶¶ 40, 35, 6, 36 n.1; *see also* Original Arbitration Demand.
[27] Purchase Agreement, at 55–61.
[28] *Id.* at 55–57.
[29] *Id.*
[30] OB 5.

The Purchase Agreement includes an arbitration provision in Section 9.6, which reads in pertinent part as follows:

> (a) Any dispute or controversy arising between the parties to this Agreement in connection with the amount of any indemnity owed pursuant to Section 9.2 or Section 9.3 shall be determined and settled by arbitration in New York, New York, by a panel of three members who shall be selected, and such arbitration shall be conducted, in accordance with the commercial arbitration rules of the American Arbitration Association, as then in effect . . . .
>
> (b) Notwithstanding anything to the contrary in this Agreement, each party retains the right to bring a proceeding before a court (or seek judicial assistance) to compel arbitration in accordance with Section 9.6(a), enforce an arbitration award granted pursuant to the procedure set forth in Section 9.6(a) or to obtain injunctive relief hereunder.[31]

Section 9.9 of the Purchase Agreement provides that the indemnification remedies under the contract are the "sole and exclusive monetary remedies" of the indemnified parties for both of the buyer and seller, respectively, except "in the case of fraud or intentional misrepresentation . . . ."[32] Additionally, Section 9.7 discusses at length the procedure for any third-party indemnification claims.[33]

Beyond indemnification, fraud, and misrepresentation, the Purchase Agreement also includes a provision entitled "Consent to Jurisdiction" in Section 12.13.[34] The Consent to Jurisdiction section identifies the appropriate jurisdiction for "any Proceeding" against (1) Lender Related Parties, as defined in the Purchase

---

[31] Purchase Agreement, at 59.
[32] *Id.* at 61.
[33] *Id.* at 59–61.
[34] *Id.* at 59–60, 73.

Agreement (not relevant here), and (2) "other Persons."[35]  "Person" is defined in the Purchase Agreement as "an individual, partnership, corporation, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization, Government Entity or department, agency or political subdivision thereof or other entity."[36]  The definition of "Proceeding" includes both actions/suits and "any arbitration proceeding."[37]

The parties disagree about the scope of Section 12.13,[38] but it is clear from the face of the contract that the vast majority of foreseeable claims likely to arise from the Purchase Agreement among the parties before me would fall into the indemnification subsections of Section 9.

Finally, Section 12.8 of the Purchase Agreement provides guidance with respect to the construction of certain words, including "hereunder."  The text of the agreement indicates that when "hereunder" (among other words) is used in the contract, that reference should be taken as a reference to the Purchase Agreement as a whole, rather than to any particular provision of the agreement.[39]

---

[35] *Id.* at 73.

[36] *Id.* at Ex. A.

[37] *Id.*

[38] *See generally* Pl. Daryl Hagler's Br. Opp'n to Def. Evolve Growth Initiatives, LLC's Mot. to Dismiss the Verified Compl. [hereinafter "AB"]; *see also* Reply Br. Supp. of Def. Evolve Growth Initiatives, LLC's Mot. to Dismiss Verified Compl.

[39] Purchase Agreement, at 71.

The Plaintiff's Complaint brings claims for declaratory judgment regarding the same financial figures at issue in the Arbitration,[40] breach of contract,[41] and breach of the implied covenant of good faith and fair dealing.[42] The declaratory judgment claim also prays that this Court will enjoin Defendant EGI to execute a "disbursement request" to release the indemnity escrow monies to the Sellers.[43] The parties disagree as to whether these claims are responsive in nature to the Arbitration.[44] Determining whether this Court has subject matter jurisdiction is a necessary predicate to reaching any of the Plaintiff's substantive claims.

2. Analysis

If the parties have agreed to arbitrate the claims at issue, I have no jurisdiction here. The right to invoke arbitration to defeat jurisdiction of this Court arises, if at all, from contract.[45] The parties here disagree as to whether the issues raised in the Complaint are subject to arbitration. The first-order question I must address is whether that disagreement is itself a matter for the Court, or whether it is reserved to the arbitrators. In resolving this question, I must, again, turn to the

---

[40] Compl. ¶¶ 47–51.
[41] *Id.* ¶¶ 52–57.
[42] *Id.* ¶¶ 58–66.
[43] *Id.* ¶ 51.
[44] *See generally* OB (arguing that these claims are properly brought as procedural defenses in the Arbitration); *see generally* AB (arguing that the claims have their own independent merit and are not merely responsive to the Arbitration).
[45] *Willie Gary*, 906 A.2d at 78–79 (quoting *Howsam v Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

contract. The default rule is that arbitrability is a question for the courts, unless the contract at issue provides otherwise.[46] The contract here does not explicitly address the question. Under our caselaw, however, the parties are considered to have explicitly and clearly provided for arbitrability to be an issue for the arbitrator where they have "generally provide[d]" for arbitration of all disputes, and "incorporate[d] a set of arbitration rules" (such as the AAA rules) that provide for the arbitrator to address the issue.[47] The parties chose AAA rules here. That choice creates a "heavy presumption" that substantive arbitrability is to be decided by the arbitrators; such presumption is overcome where the carve-outs to arbitration are "so obviously broad and substantial" as to indicate that the parties, notwithstanding their adoption of the AAA rules, intended arbitrability to be for the court.[48]

Here, the Plaintiff points to the contractual dispute-resolution scheme under Section 12.13 as a broad carve-out from arbitration, indicating substantive arbitrability is an issue for this Court. It is true that proceedings involving the "Lender Related Parties" and "other Persons" are assigned venues in court in the Purchase Agreement. As for the parties here, however, representatives of the buyer and the sellers, virtually all non-fraud actions are subject broadly to

---

[46] *Id.*
[47] *Willie Gary*, 906 A.2d at 80.
[48] *McLaughlin*, 942 A.2d at 625.

arbitration: "*Any dispute* or controversy arising between the parties to this Agreement *in connection with* the amount of any indemnity owed pursuant to Section 9.2 or Section 9.3 shall be determined and settled by arbitration . . . ."[49] "In a case where there is any rational basis for doubt about [whether the parties intended an arbitrator to determine arbitrability], the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her."[50] The broad submission of all disputes relating to escrow to arbitration, along with the adoption of the AAA rules, at least raises such a doubt here.

The Plaintiff, citing *Willie Gary*, notes that the arbitration clause has an equity carve-out.[51] That carve-out, unlike in *Willie Gary*, is not a general reservation of equitable jurisdiction to the courts. The Agreement provides that each party has the right to seek court intervention in three cases: to "[1] compel arbitration in accordance with Section 9.6(a), [2] enforce an arbitration award granted pursuant to the procedure set forth in Section 9.6(a) or [3] to obtain injunctive relief hereunder."[52] As I read this provision, it provides a limited role for equity: to compel arbitration; to enforce an arbitration award; or to provide similar "injunctive relief hereunder." The Plaintiff raises that Section 12.8 of the

---

[49] Purchase Agreement, at 59 (emphasis added).
[50] *McLaughlin*, 942 A.2d at 625.
[51] *See Willie Gary*, 2006 WL 75309, at *9.
[52] Purchase Agreement, at 59.

Agreement indicates that "hereunder" is to be read, generally, as under the Agreement in its entirety;[53] accordingly, he argues that any request for injunctive relief takes the dispute out of the arbitration provision. This would be a broad carve-out indeed. But the Plaintiff's reading is not sensible; it renders the first two provisions—enforcing arbitrability—surplusage.[54] In context, the only type of court-provided injunctive relief available "in connection with the amount of any indemnity owed" *is in aid of arbitration.* Injunctive relief "hereunder" must refer to relief of that ilk.[55]

Concerning the amounts in escrow, the parties agreed to a broad arbitration provision, adopting rules assigning substantive arbitrability to an arbitral panel. The Plaintiff argues that its Complaint does not, strictly speaking, address the escrow.[56] Since I have found that the arbitration clause broadly provides for arbitration of all disputes "in connection with" the amounts in escrow, and adopts the AAA rules concerning substantive arbitrability, the issue of whether the

---

[53] *Id.* at 71.

[54] *See, e.g.*, *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (citation omitted) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

[55] That is, the language is subject to the rule of *ejusdem generis*, that where a general follows a specific, the general relates to the specific. *See, e.g., SPay, Inc. v. Stack Media Inc.,* 2021 WL 1009181 (Del. Ch. Dec. 21, 2021).

[56] *See* AB 18.

Complaint is "in connection with the amount of any indemnity owed" from escrow is one for the panel of arbitrators.[57]

Since I am without jurisdiction here, it would be an advisory opinion to comment on the issue just addressed, and I decline to do so here. I will point out, however, that the clear relationship between the Defendants' demand underlying the Arbitration and the Plaintiff's Complaint raise substantial questions of whether a stay would be appropriate under the *McWane*[58] doctrine, in favor of arbitration, to the extent jurisdiction over the Complaint does exist in this Court.

The parties should inform me whether a stay pending review of arbitrability by the arbitrators or a dismissal is preferrable.

Sincerely,

/s/ Sam Glasscock III
Vice Chancellor

---

[57] *See Schein*, 139 S. Ct. at 530 (directing courts faced with any question of substantive arbitrability to defer to the arbitrator where the parties' contract so provides).

[58] *See generally McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970).