**JAMES & JACKSON, LLC, Defendant Below, Appellant,**

v.

**WILLIE GARY, LLC, Plaintiff Below, Appellee.**

No. 59, 2006.

Supreme Court of Delaware.

Submitted: March 1, 2006.
Decided: March 14, 2006.

Brian A. Sullivan, Esquire, and Amy D. Brown, Esquire, of Werb & Sullivan, Wilmington, Delaware, and William A. Brewer, III, Esquire, Michael J. Collins, Esquire (argued), Kenneth N. Hickox, Esquire, Candice S. Cook, Esquire, and Eric P. Haas, Esquire, of Bickel & Brewer, Dallas, Texas, for Appellant.

Francis G.X. Pileggi, Esquire (argued), Bernard G. Conaway, Esquire, Leslie B. Spoltore, Esquire and Sheldon K. Rennie, Esquire, of Fox Rothschild, LLP, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice.

In this expedited appeal, we consider whether an issue of substantive arbitrability (a dispute over the scope of an arbitration provision) should be decided by an arbitrator or a court. The general rule, announced by the United States Supreme Court and followed by this Court, is that courts should decide questions of substantive arbitrability. There is an exception, however, when there is "clear and unmistakable evidence" that the parties intended otherwise.[1] The majority view in other jurisdictions is that, where the arbitration clause provides that the arbitration will be conducted in accordance with the rules of the American Arbitration Association (AAA), that statement constitutes clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability. We adopt the majority view, but reach the same conclusion as the trial court—that under the arbitration clause at issue, the court should decide substantive arbitrability.

After concluding that the court should decide arbitrability, the trial court analyzed the parties' agreement and determined that it did not require arbitration of appellee's claims. Appellee's complaint seeks injunctive relief, specific performance, and, alternatively, dissolution. Because the parties' operative agreement expressly authorizes courts to provide those forms of relief, we agree with the trial court, and affirm.

Factual and Procedural Background

Willie Gary LLC (Willie Gary) and James & Jackson LLC (J & J) are the two owners of MBC Gospel Network, LLC (MBC), a business that operates a cable television channel known as the Black Family Channel. MBC allegedly needs a significant infusion of capital, and Willie Gary, the 80% owner, has been negotiating with a third-party investor. Under the terms of a proposed agreement, the investor would receive a 31% interest in MBC in exchange for its investment. Willie Gary asked J & J to agree that the 31% would be taken from each owner's interest pro rata, but J & J refused.

Willie Gary filed suit in the Court of Chancery, seeking a mandatory injunction requiring J & J to accept the requested reduction in its ownership interest as part of the proposed investor agreement. Willie Gary later amended its complaint to add a claim for specific performance, and, alternatively, for dissolution. Shortly after Willie Gary filed the original complaint, J & J filed a demand for arbitration, and then a motion to dismiss or stay in favor of arbitration. After expedited briefing, the trial court denied the motion to dismiss, holding that Willie Gary did not have to arbitrate its claims. This appeal followed.

Discussion

In *Howsam v. Dean Witter Reynolds, Inc.,*[2] the United States Supreme Court restated the basic principles governing arbitration:

This Court has determined that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Although the Court has also long recognized and enforced a "liberal federal policy favoring arbitration agreements," it has made

---

1. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

2. 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

clear that there is an exception to this policy: The question of whether the parties have submitted a particular dispute to arbitration, *i.e.* the *"question of arbitrability,"* is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." [3]

The *Howsam* court distinguished between issues of substantive arbitrability and procedural arbitrability. Substantive arbitrability issues are gateway questions about the scope of an arbitration provision and its applicability to a given dispute. The court presumes that parties intended courts to decide issues of substantive arbitrability. The opposite presumption applies to procedural arbitrability issues, such as waiver, or satisfaction of conditions precedent to arbitration.

 Delaware arbitration law mirrors federal law:

This Court has recognized that the public policy of Delaware favors arbitration. A party cannot be forced to arbitrate the merits of a dispute, however, in the absence of a clear expression of such intent in a valid agreement. The threshold question regarding the validity of an arbitration agreement is known as substantive arbitrability.

\* \* \*

 The question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question of

'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."

\* \* \*

[T]he United States Supreme Court held that courts should not presume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so." [4]

In applying the "clear and unmistakable" standard, most courts have held that, "when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." [5]

The Amended and Restated Operating Agreement of MBC (the LLC Agreement) governs the parties' disputes, and provides for arbitration:

12.12 Arbitration

Any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement shall be settled by arbitration ... in accordance with the then-existing rules of the American Arbitration Association ("AAA")....Each Member agrees with the other Members that the other Members would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms.... Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching Members may be entitled, at law or in equity, the nonbreaching Members shall

---

**3.** *Id.* at 83, 123 S.Ct. 588 (Citations omitted.).

**4.** *DMS Properties–First, Inc. v. P.W. Scott Associates, Inc.,* 748 A.2d 389, 391–92 (Del. 2000) (Citations omitted).

**5.** *Contec Corp. v. Remote Solution Co., Ltd.,* 398 F.3d 205, 208 (2d Cir.2005). *See, e.g.:*

*Terminix Int'l Co., L.P. v. Palmer Ranch L.P.,* 432 F.3d 1327 (11th Cir.2005); *FSC Securities Corp. v. Freel,* 14 F.3d 1310 (8th Cir. 1994); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469 (1 Cir.1989); *Citifinancial, Inc. v. Newton,* 359 F.Supp.2d 545 (S.D.Miss.2005).

be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

Because the LLC Agreement involves interstate commerce, the Federal Arbitration Act (FAA) governs.[6] The trial court recognized the applicability of federal law, and the federal precedents holding that reference to the AAA rules evidences the parties' intent to have the arbitrator determine substantive arbitrability. Nonetheless, the trial court concluded that the court, not an arbitrator, should decide the parties' dispute over whether Willie Gary's claims should be arbitrated.

We agree with almost all of the trial court's analysis. We write separately only to address the significance that should be attributed to reference to the AAA rules in an arbitration clause. After reviewing federal precedents, the trial court decided not to follow the line of cases holding that incorporation of the AAA (or similar) rules serves as clear and unmistakable evidence that the parties intended substantive arbitrability to be decided by an arbitrator:

> Although I concede that this line of cases has a rational basis, I do not believe they are persuasive exercises in contractual interpretation. They are instead illustrative of the continuing policy preference, even after [*First Options of Chicago, Inc. v. Kaplan*[7]], of federal

courts with burgeoning dockets to refer even the question of arbitrability to arbitration.

\* \* \*

It may be that our Supreme Court might, for good reason, wish to follow the weight of federal authority by holding as a matter of law that a contractual clause calling for arbitration of a class of disputes under the AAA Rules evinces a clear and unmistakable intent to arbitrate arbitrability questions. Such a ruling would turn such a reference into a term of art on the subject of arbitrability and arguably be economically efficient as a general policy rule.[8]

██ We do not believe that the choices are as stark as the trial court suggests. As a matter of policy, we adopt the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator. We do so in the belief that Delaware benefits from adopting a widely held interpretation of the applicable rule, as long as that interpretation is not unreasonable. The majority view does not, however, mandate that arbitrators decide arbitrability in *all* cases where an arbitration clause incorporates the AAA rules. Rather, it applies in those cases where the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability.[9]

---

**6.** *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

**7.** 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

**8.** *Willie Gary LLC v. James & Jackson LLC et al.,* 2006 WL 75309 at \*7–8 (Del.Ch.).

**9.** *See, e.g.: Terminix Int'l. Co., LP v. Palmer Ranch LP,* 432 F.3d at 1329 (Arbitration

clauses covered "any controversy or claim... arising out of or relating to" the agreement.); *Contec Corp. v. Remote Solution Co., Ltd.,* 398 F.3d at 208 (Arbitration clause covered "any controversy arising with respect to this Agreement....."); *Citifinancial, Inc. v. Newton,* 359 F.Supp.2d at 549 (Arbitration clause provided that "any Claim... shall be resolved by binding arbitration...."); *Congress Const. Co., Inc. v. Geer Woods, Inc.,* 2005 WL 3657933 at \*3 (D.Conn.) (Contract provided for arbitra-

In this case, the arbitration clause begins by requiring arbitration of any controversy arising out of or relating to the LLC Agreement in accordance with the AAA rules. But it continues by expressly authorizing the nonbreaching Members to obtain injunctive relief and specific performance in the courts. Thus, despite the broad language at the outset, not all disputes must be referred to arbitration. Since this arbitration clause does not generally refer all controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator. There being no such clear and unmistakable evidence of intent, the trial court properly undertook the determination of substantive arbitrability.[10]

Turning to the decision on arbitrability, we are satisfied that the Court of Chancery properly construed the LLC Agreement as providing recourse to the courts, under specified circumstances, notwithstanding the presumption in favor of arbitrability:

> [Section] 12.12 plainly states that a member of the LLC who is not in breach of the agreement "shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions" of the LLC Agreement "in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof." That entitlement is "in addition to any other remedy to which the nonbreaching Members may

be entitled, at law or in equity...." Although J & J would like me to conclude that this sentence of § 12.12 simply provides a party that has prevailed in arbitration to seek enforcement from a court, that reading is not convincing because of the earlier portion of § 12.12 that provides that "judgment upon the [arbitration] award rendered may be entered in any court having jurisdiction concerning the matter."

\* \* \*

As to Willie Gary's claim for dissolution, another provision of the LLC Agreement bears on whether it must arbitrate. By its explicit terms, § 11 of the LLC Agreement contemplates judicial involvement in the dissolution process. One of the "Dissolution Events" defined in the Agreement occurs when there is a "judicial determination that an event has occurred that makes it unlawful, impossible or impractical to carry on MBC's business." As noted, this language tracks § 18–802 of the LLC Act, which provides that "the Court of Chancery may decree dissolution... whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement." In the overall structure of the LLC Agreement, I find it impossible to conclude that Willie Gary must press a claim for dissolution before an arbitrator in the first instance, when the Agreement itself expressly refers to a "judicial determination" of whether grounds for dissolution exist, and the dissolution provisions of the Agreement then go on to refer to the involvement of a "court of competent jurisdiction." That conclu-

tion of any "Claim arising out of or related to the Contract...."); *Apollo Computer, Inc. v. Berg,* 886 F.2d at 470 (Contract provided that "all disputes arising out of or in connection with the agreement" would be arbitrated.).

**10.** *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. at 83, 123 S.Ct. 588..

sion is strengthened by my preceding discussion of § 12.12, which notes that the drafters of the LLC Agreement contemplated judicial consideration of claims for injunctions and specific performance.

Thus, we affirm the substantive arbitrability decision on the basis of the reasoning and analysis provided by the Court of Chancery.

## Conclusion

Based on the foregoing, the judgment of the Court of Chancery is affirmed.