**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: April 5, 2016
Date Decided: May 13, 2016

Kelly E. Farnan, Esquire
Blake Rohrbacher, Esquire
Susan M. Hannigan, Esquire
Katharine L. Mowery, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Martin S. Lessner, Esquire
Kathaleen St. J. McCormick, Esquire
Lakshmi A. Muthu, Esquire
Julia B. Ripple, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Re:     *Angus v. Ajio, LLC*, Civil Action No. 11895-VCG

Dear Counsel:

This matter concerns a demand for arbitration filed by several members of MoGo Sport, LLC ("MoGo" or the "Company") against certain MoGo officers, pursuant to an arbitration provision in the Company's Operating Agreement, which provides that "[a]ll disputes among Members or former Members over the provisions of [the Operating Agreement] . . . shall be submitted to binding arbitration under the guidelines of the American Arbitration Association."[1]  The arbitration demand concerns alleged breaches of fiduciary duty, fraud, and violations of the Operating Agreement by MoGo officers Bruce Angus, Keith Everson, Gary Greene, and John

---

[1]  Pls' Verified Complaint, Ex. B ("Operating Agreement") § 6.4.

Thomas Hoey. The officers then filed this action, moving for a preliminary injunction to enjoin the arbitration on the grounds that (1) Everson, Greene, and Hoey are not parties to the Operating Agreement, and therefore have not consented to participate in any arbitration arising therefrom; and (2) the claims against Angus—who *is* bound by the Operating Agreement—are outside the scope of the arbitration provision in the Operating Agreement. Defendants[2] Ajio, LLC, Richard Rockwell, and Kristi Leskinen—the members of MoGo that demanded arbitration—in turn have moved to dismiss the action, arguing that (1) any disputes concerning the applicability of the arbitration provision must be resolved by the arbitrator, and (2) Plaintiffs' claims are subject to arbitration and should be dismissed for lack of subject matter jurisdiction. After full briefing of the motions, I heard oral argument on March 28, 2016.

To clarify, before me were the motion to dismiss advanced by the Defendant-Members (the natural "plaintiffs" in the arbitration demand) and the motion to preliminarily enjoin the arbitration sought by the Plaintiff-Officers (who would defend in an arbitration). From the bench, I denied the motion to dismiss and granted the motion to enjoin the arbitration preliminarily as to Messrs. Everson, Greene, and Hoey. In short, I determined that it is more likely than not that I will ultimately find

---

[2] Throughout the remainder of this Letter Opinion, for the sake of clarity—the parties' positions are the reverse of what may seem natural—I refer to the Plaintiffs as "Plaintiff-Officers" and to the Defendants as "Defendant-Members."

that Everson, Greene, and Hoey, as non-signatories to the Operating Agreement, are not bound to arbitration, and that to force them to arbitrate absent a contractual obligation to do so involves a quantum of irreparable harm that outweighs the risk of improvidently granting a preliminary injunction.

With respect to Angus, after applying the test of arbitrability set forth by our Supreme Court in *James & Jackson, LLC v. Willie Gary, LLC*,[3] I reserved judgment on the motions. I determined that (1) the parties, in light of their contract to arbitrate subject to the "guidelines" of the American Arbitration Association (the "AAA"), intended to be subject to the rules of the AAA, including the rule that substantive arbitrability is to be determined by the arbitrator;[4] and (2) the parties contractually agreed that all of a set of issues (albeit issues limited to a narrow field)[5] should be submitted to the arbitrator. Under *Willie Gary*, the arbitration of the Defendant-Members' dispute with Angus must therefore go forward, so long as their demand for arbitration raises non-frivolous issues for arbitration; absent such issues the matter should *not* proceed before an arbitrator. In other words, our case law recognizes that litigants' economy demands that, even where the parties contracted

---

[3] 906 A.2d 76 (Del. 2006).

[4] *See* AAA Commercial Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleas ed, at Rule R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

[5] The arbitration provision covers only disputes "among Members or former Members over the provisions of" the Operating Agreement. Operating Agreement § 6.4.

for arbitrability to be determined by an arbitrator, where it is nonetheless manifest that an arbitration demand is frivolous on its face, justice will not indulge such frivolity. With respect to this latter issue—whether the Defendant-Members have raised any non-frivolous issues for arbitration—I reserved decision.

I directed the parties to meet and confer regarding remaining issues and, if possible, to agree whether they could resolve the issues regarding arbitration involving Mr. Angus. Unfortunately, the latter issue could not be resolved; for the reasons below, I find that arbitrability of the claims in the arbitration demand regarding Angus are for the arbitrator, and the Plaintiff-Officers' motion to preliminarily enjoin the arbitration with regard to Angus must be denied. My reasoning follows.

## I. FACTUAL BACKGROUND

The following adumbration of the underlying facts is sufficient to the issue before me.[6] MoGo, a Delaware LLC, sells flavored mouth guards for use by athletes in sports requiring protective mouth gear.[7] According to the Defendant-Members, "[a] part of MoGo's mission is athlete safety, including concussion awareness and protection."[8]

---

[6] The facts are taken from the Defendant-Members' "Statement of Claim" in the arbitration demand.
[7] Transmittal Aff. of Lakshmi A. Muthu, Esq. in Supp. of Defs.' Opening Br. in Supp. of Mot. to Dismiss, Ex. 3 ("Arbitration Demand"), at 1.
[8] *Id.*

In December 2011, Defendant-Member Leskinen attended a MoGo product-development meeting, where "the meeting participants discussed plans for the establishment of a concussion prevention program, including a baseline testing program for athletes."[9] Leskinen subsequently introduced the Plaintiff-Officers to Dr. Julian Bailes, a neurologist, with the understanding that Leskinen should be included in all future conversations between MoGo and Dr. Bailes, and that "any concepts discussed between MoGo and Dr. Bailes would be presented to MoGo to determine whether the opportunity should be pursued by the Company."[10] One such concept concerned a product developed (in part) by Dr. Bailes: "a protective device and related technology (the 'Q30') that was designed to reduce the risk of concussions among athletes."[11] That product, according to the Defendant-Members, was "in line with MoGo's interest in the development of concussion prevention products."[12] Nonetheless, according to the arbitration demand, the Plaintiff-Officers, in breach of duties owed MoGo, repeatedly and secretly communicated with Dr. Bailes without disclosing material information regarding those communications to the Defendant-Members.[13] The Plaintiff-Officers then created their own new companies—Q30 Labs, LLC and related entities (collectively, the

---

[9] *Id.* at 2.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

"Q30 Entities")—for the purpose of "diverting the unique Q30 opportunity and misappropriating it for their own personal benefit."[14]   The Defendant-Members became aware of the alleged misappropriation of the Q30 opportunity in 2013, but, for various reasons, decided not to pursue equitable relief against the Plaintiff-Officers.[15]

In October 2015, the Q30 Entities entered into a multi-million dollar licensing agreement with Performance Sports Group, Inc. ("PSG"), which agreement was also not disclosed to the Defendant-Members.[16]  Sussex IM, Inc. ("Sussex") is an entity controlled by Plaintiff-Officer Everson that serves as a manufacturer for MoGo's products.  Four days after the Q30 entities entered the licensing agreement with PSG, Sussex made an offer to purchase all of MoGo's members' membership interests, at a price that Defendant-Members assert "did not take into account the considerable value of the misappropriated Q30 opportunity/asset."[17]   Defendant-Members Rockwell and Ajio, LLC, still unaware of the PSG deal, were among the more than 80% of total membership interests in the Company that consented to the purchase offer.[18] The MoGo Operating Agreement contains a "drag along" provision, which, "in the event that some of the Members accept an offer from a non-Member to

---

[14] *Id.* at 3.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

purchase a minimum of 80% of the outstanding Units," requires that "all of the Members (including any Member who did not accept the Non-Member's offer to purchase) shall be required to sell all of their units to the Non-Member on the same terms and conditions as those received by the Members pursuant to such offer."[19]

Less than one month later, Defendant-Members Ajio, LLC and Rockwell first learned of the PSG deal with the Q30 Entities and attempted to rescind their consents to the Sussex purchase.[20] The rescissions, if effective, would deprive Sussex of the 80% membership interest needed to approve the purchase. On December 23, 2015, after receiving no confirmation by the Company regarding their demand for rescission, the Defendant-Members commenced the underlying arbitration that is the subject of this action.

## II. ANALYSIS

The Delaware Supreme Court held in *Willie Gary* that this Court should not presume parties agreed to arbitrate issues of arbitrability absent "clear and unmistakable evidence that they did so"; the court then set forth a two-prong test for finding such evidence.[21] Under the *Willie Gary* test, "clear and unmistakable evidence" of intent to arbitrate arbitrability exists where there is "(1) an arbitration clause that generally provides for arbitration of all disputes; and (2) a reference to a

---

[19] Operating Agreement § 2.18.
[20] Arbitration Demand, at 3–4.
[21] *Willie Gary*, 906 A.2d at 79 (citation omitted).

set of arbitration rules that empower arbitrators to decide arbitrability, such as the American Arbitration Association ("AAA") Rules."[22] In this Court's subsequent decision in *McLaughlin v. McCann*,[23] the court held further that "absent a clear showing that the party desiring arbitration has essentially no *non-frivolous* argument about substantive arbitrability to make before the arbitrator, the [C]ourt should require the signatory to address its arguments against arbitrability to the arbitrator."[24] That is, the *McLaughlin* court expanded the *Willie Gary* test "to include a third prong, which allow[s] the party seeking judicial relief to argue that the party seeking arbitration ha[s] essentially no non-frivolous argument about the substantive arbitrability of the dispute."[25] The reason for this third prong is clear: where it is readily apparent to the Court that all of the issues regarding substantive arbitrability are, on their face, clearly frivolous, it would be a waste of resources for the Court to send the claims to the arbitrator, notwithstanding their frivolousness, for consideration of arbitrability. Thus, only where "a non-frivolous argument in favor of substantive arbitrability exists and the first two prongs of *Willie Gary* are satisfied, [should] the Court . . . defer to the arbitrator."[26] However, the limited purpose of this third prong—litigants' economy—mandates that the Court only conduct a

---

[22] *Legend Natural Gas II Holdings, LP v. Hargis*, 2012 WL 4481303, at *5 (Del. Ch. Sept. 28, 2012) (citing *Willie Gary*, 906 A.2d at 79).
[23] 942 A.2d 616 (Del. Ch. 2008).
[24] *Id.* at 626–27 (emphasis added).
[25] *Riley v. Brocade Commc'ns Sys., Inc.*, 2014 WL 1813285, at *1 (Del. Ch. May 6, 2014).
[26] *Id.*

*limited* analysis of whether there exists any non-frivolous claims; in cases where more than a quick, facial review of the claims would be required of the Court, the matter should proceed to the arbitrator for a determination of substantive arbitrability.[27] To do more would not serve economy, and would risk depriving the parties of a part of the benefit of their bargain: reserving issues of arbitrability for the arbitrator.

As described above, I have already determined that the parties' agreement is such that issues of substantive arbitrability are for the arbitrator. Remaining is the limited examination of whether non-frivolous issues are presented. As a corollary to the discussion of the limits of this issue, if any of the claims for relief to be presented to an arbitrator appear non-frivolous on their face, all issues in the demand should be presented to the arbitrator.

Here, in their underlying demand for arbitration, the Defendants raised three species of claims: first, that the Plaintiff-Officers breached their fiduciary duties owed as officers of MoGo to the Defendant-Members, including their duties "to act

---

[27] *See GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1120–21 (Del. Ch. 2010) ("In a case where there is any rational basis for doubt about [substantive arbitrability], the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her." (quoting *McLaughlin*, 942 A.2d at 625)); *see also 3850 & 3860 Colonial Blvd., LLC v. Griffin*, 2015 WL 894928, at *4 (Del. Ch. Feb. 26, 2015) ("The Court's analysis of whether there is any non-frivolous argument is limited—'a court must not delve into the scope of the arbitration clause and the details of the contract and pending lawsuit.'" (quoting *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *5 (Del. Ch. Mar. 28, 2013))); *Li*, 2013 WL 1286202, at *9 (describing the "low threshold" the Court is obligated to apply in analyzing whether any non-frivolous claims have been asserted).

with loyalty and good faith and to avoid any conflict of duty and self-interest";[28] second, that the Plaintiff-Officers committed fraud against the Defendant-Members by "failing to disclose to [the Defendant-Members] material facts, which [the Plaintiff-Officers] knew were unknown to [the Defendant-Members], relating to the value of the Q30 device and technology and the existence and value of the PSG deal with the Q30 Entities";[29] and finally, that the Plaintiff-Officers' conduct breached several provisions of the MoGo Operating Agreement, including the covenant not to compete.

After review of these claims, I find that the Defendant-Members have raised at least one non-frivolous claim in their demand for arbitration, such that I should defer this matter to arbitration. With respect to the covenant not to compete, the Plaintiff-Officers argue that that provision must be pursued, under the terms of the Operating Agreement, by the Company, not by the Members. In other words, they argue that the Defendant-Members lack standing to force an arbitration. However, issues of standing by signatories to a contract to enforce breaches of that contract do not strike me as the kind of frivolous issues in regard to which the parties' agreement in favor of arbitration should be overridden. With respect to the motion for preliminary injunctive relief, I find that the Plaintiff-Members have failed to

---

[28] Arbitration Demand, at 4.
[29] *Id.*

demonstrate that it is likely that they will be able to show clearly that the Defendant-Members' assertion of standing is frivolous, and the request to enjoin the arbitration must therefore be denied.

Given that this issue should go to the arbitrator to determine arbitrability, I need not address the other issues raised, which the Plaintiff-Officers suggest are facially unviable. I note, however, that the arbitration provision covers only disputes "among Members or former Members *over the provisions of*" the Operating Agreement.[30] The Plaintiff-Officers assert that the breach-of-fiduciary-duty claims clearly are outside of the Operating Agreement, and are thus beyond the scope of arbitration. That assertion, however, is not clearly obvious on the record before me. The Plaintiff-Officers assert that the Operating Agreement is *silent*[31] as to fiduciary duty, and therefore such duties arise from statute,[32] and not the agreement. It follows, they argue, that an alleged breach of those fiduciary duties is not a dispute "over the provisions" of the Operating Agreement and is therefore outside the scope of arbitration. While the Plaintiff-Officers find this self-evident, it strikes me as a

---

[30] Operating Agreement § 6.4 (emphasis added).
[31] The Operating Agreement makes a single reference to "fiduciary duty" in a provision regarding the expulsion of members and the purchase price of any expelled member's interest; Section 2.15(b) provides that members may be expelled for "acting in a manner inconsistent with the fiduciary duty owed by one partner to another." Section 2.2 of the Operating Agreement, which describes the rights and obligations of the officers, is silent as to fiduciary duty.
[32] *See* 6 *Del. C.* § 18-1104 ("In any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties and the law merchant, shall govern.").

11

nice question whether a breach of fiduciary duty claim arises from an agreement which by its (presumably intentional) silence incorporates—presumably intentionally—default fiduciary duties by operation of statute. This question, which warrants more than a cursory inquiry by the Court into the frivolousness of the claim, should be referred to arbitration pursuant to the agreement of the parties.

## III. CONCLUSION

For the foregoing reasons, with respect to Mr. Angus only, the Plaintiffs' motion for a preliminary injunction is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III
