IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CORONADO COAL II, LLC, | § | |
| | § | No. 209, 2022 |
| Plaintiff-Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| BLACKHAWK LAND AND | § | C.A. No. N21C-10-136 |
| RESOURCES, LLC, | § | CCLD |
| | § | |
| Defendant-Below, | § | |
| Appellee. | § | |

Submitted: December 7, 2022
Decided: March 3, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

# O R D E R

On this 3rd day of March 2023, it appears to the Court that:

(1) The plaintiff-appellant, Coronado Coal II, LLC ("Coronado") appeals from a Superior Court order dismissing its complaint for lack of subject matter jurisdiction. The complaint alleges that defendant-appellee, Blackhawk Land and Resources, LLC, ("Blackhawk") breached a sub-sublease agreement between the parties when it would not allow Coronado to conduct retreat coal mining[1] in a seam

---

[1] In its complaint, Coronado describes "Retreat mining" as "the part of 'room and pillar' method of underground coal mining in which remaining pillars of coal are mined, or 'pulled' as mining operations exit the mining area." App. to Opening Br. at A7.

of coal in West Virginia known as the Powellton "A" seam. The Superior Court found that an arbitration clause that was part of the sub-sublease required that Coronado's claim be arbitrated.[2] On appeal, Coronado claims that the Superior Court misconstrued the arbitration clause. It also makes a second argument to the effect that reversal is required if this court finds that the arbitration clause is ambiguous.

(2) Coronado is a subsidiary of Coronado Global Resources Inc., a company that produces metallurgical coal. Blackhawk holds interests in leases for tracts of coal in West Virginia for the purpose of coal mining. On December 21, 2015, the parties entered into a sub-sublease in which Blackhawk, sublessor, subleased to Coronado, sublessee, the right to mine coal in the Powellton "A" seam in West Virginia. The original lease between the lessor and lessee was created in 1937 ("1937 Lease") and through various assignments and subleases Blackhawk was the sublessee of the lease when it entered into its sub-sublease with Coronado. The sub-sublease between Blackhawk and Coronado was made subject to the terms and conditions contained in the 1937 Lease. One of those terms, contained in Article Twenty, was an arbitration clause, which reads, in pertinent part:

> Should any question arise between the parties hereto as to
> the performance by the Lessee of Articles Six, Seven,
> Eight, Nine, and Ten hereof, or any of them, or of any

---

[2] *Coronado Coal II, LLC v. Blackhawk Land and Res. LLC*, 2022 WL 1772246, at *5 (Del. Super. May 31, 2022).

2

covenant contained in said Articles, or any of them, every such question shall be determined by arbitration in the manner provided for in this Article . . . .[3]

(3) Article Six of the 1937 Lease provides that:

The Lessee shall have the right to mine any merchantable seam of coal and covenants that in mining any such seam it will mine the same in such a manner as to recover the greatest possible amount of coal therefrom and in such manner that the mining thereof shall not injure or destroy any other vein or seam of coal not mined, or prevent the convenient and proper mining thereof.[4]

(4) The sub-sublease requires Coronado to submit mining plans to Blackhawk for approval, and to conduct mining according to these plans, so as "[t]o protect the properties and coal reserves included herein from waste, injury or damage[.]"[5] Without Blackhawk's approval, Coronado could not begin mining.[6]

(5) Between 2016 and 2020, Coronado submitted mining plans reflecting its plans for retreat mining to Blackhawk in accordance with the sub-sublease, which Blackhawk approved. However, on December 15, 2020, Blackhawk informed Coronado by letter that Blackhawk no longer approved of Coronado's plans to conduct pillar mining underneath Blackhawk's nearby mining operations at Coal Branch mine. In its letter, Blackhawk asserted that Coronado's retreat mining plans were "problematic for the continued development and safety of the Blackhawk Coal

---

[3] App. to Opening Br. at A134.
[4] *Id.* at A128.
[5] *Id.* at A73-74.
[6] *Id.* at A74.

3

Branch Mine which is situated above the Powellton mine."[7]  As a result of this disapproval, Coronado claims that it "left in place at least 100,000 tons of metallurgical coal, which is among the most valuable coal in the United States."[8]

(6)  Coronado also filed the complaint in this case, in which it asserted claims for breach of contract and promissory estoppel.  As to its breach of contract claim, Coronado alleged that Blackhawk's rejection of Coronado's mining plans in the area of the Coal Branch mine "was meritless"[9] because "Coronado's operations in the Powellton ["A"] Seam did not present any unusual risk[;]"[10] and, therefore, the objection violated Coronado's rights under the sub-sublease.  Coronado cites Article Six of the 1937 Lease, which grants Coronado the right to mine the Powellton "A" Seam "in such a manner as to recover the greatest possible amount of coal therefrom . . . ."[11]  As to its alternative promissory estoppel claim, Coronado alleged that: (1) Blackhawk's previous approval of Coronado's mining plans constituted a promise by Blackhawk "that Coronado could perform retreat mining in the Powellton ["A"] Seam[;]"[12] (2) Coronado had been foreseeably induced "to invest considerable time and significant resources in implementing"[13] its retreat mining plans by Blackhawk's

---

[7] *Id.* at A93.
[8] Opening Br. at 9 (citing App. to Opening Br. at A9).
[9] App. to Opening Br. at A20.
[10] *Id.*
[11] *Id.* at A19; *see id.* at A128.
[12] *Id.* at A20.
[13] *Id.*

alleged promise; and (3) "Blackhawk's subsequent objection to Coronado's mining plans"[14] caused Coronado to sustain damages for which it was entitled to compensation.

(7)  Blackhawk moved to dismiss Coronado's complaint for lack of subject matter jurisdiction on the ground that the arbitration clause divested the Superior Court of the authority to hear Coronado's claims.  In response, Coronado asserted that the arbitration clause did not "directly relate"[15] to its claims because the dispute arose out of Blackhawk's actions, namely Blackhawk's refusal to approve Coronado's retreat mining plan.  Coronado focused on the arbitration clause's phrase, "the performance by the Lessee[,]"[16] arguing that that phrase limited the scope of the arbitration clause only to  circumstances in which the dispute arises out of actions on the part of Coronado, not actions by Blackhawk.

(8)  In granting the motion to dismiss, the Superior Court found that the "unambiguous terms" of the arbitration clause "demonstrate[ed] an agreement to arbitrate all claims regarding the Lessee's performance under Article Six" of the 1937 Lease; and both Coronado's breach of contract and promissory estoppel claims

---

[14] *Id.* at A21.
[15] *Id.* at A112.
[16] *Id.* at A106 (emphasis omitted); *see id.* at A113; *see id.* at A134.

"directly relate[d] to Coronado's performance of rights and obligations" under Article 6 of the 1937 Lease.[17]

(9) Coronado contends on appeal that the Superior Court erred by misapplying well-established principles of contract interpretation when it determined that the "unambiguous terms" of the arbitration clause "required Coronado to arbitrate all claims set forth in the Complaint even though Blackhawk prohibited Coronado's retreat mining and Coronado's claims arise from the Sub-Sublease . . . and the 1937 Lease."[18] Coronado contends that the arbitration clause governs only claims arising out of an action executed by the lessee.[19] "[B]ecause Coronado did not actually perform any rights, obligations, or covenants therein that underlie its claims[,]" Coronado argues, its claims "do not arise from Coronado's performance of Article Six" and are therefore not arbitrable.[20]

(10) Coronado further explains its contention as follows. It argues that the articles within the scope of the Arbitration Clause do not address the lessor's conduct, but instead address only the lessee's conduct.[21] It further claims that the arbitration clause itself should be read consistently to "make arbitrable" only those

---

[17] *Coronado Coal II, LLC v. Blackhawk Land and Res. LLC*, 2022 WL 1772246, at *5 (Del. Super. May 31, 2022).
[18] Opening Br. at 14, 15.
[19] *Id.* at 16-17, 20.
[20] *Id.* at 22 (emphasis omitted).
[21] *Id.* at 3-4.

"disputes arising from the 'performance by the Lessee' of its mining operations."[22] It further claims that the Superior Court failed to apply the phrase "performance by the Lessee" according to its plain meaning.[23] Coronado argues that, when the dictionary definitions of "performance" as "execution of an action"[24] and of "execute," as "to carry [it] out fully: put [it] completely into effect"[25] are applied to the arbitration clause, only claims that arise because Coronado "fully carried out, or put completely into effect, an action under Article Six of the 1937 Lease[,]" are arbitrable.[26] Coronado's claims, it argues, are not arbitrable because they arise from Blackhawk's rejection of Coronado's mining plans and not from any action performed fully by Coronado.[27]

(11) Whether a court has subject matter jurisdiction is a question of law this Court reviews *de novo*.[28] Further, this Court "review[s] questions of contract interpretation *de novo*."[29]

---

[22] *Id.* at 16.

[23] *Id.* at 4.

[24] *Id.* at 20-21; *see Coronado Coal II, LLC v. Blackhawk Land and Res. LLC*, 2022 WL 1772246, at *4 n.47 (Del. Super. May 31, 2022) (quoting Performance, https://www.merriam-webster.com/dictionary/performance (Feb. 22, 2022)).

[25] Opening Br. at 21 (quoting Execute, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/execute (last visited Aug. 5, 2022)) Merriam-Webster defines "execute" as "to carry out fully : put completely into effect[.]" Execute, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/execute (last visited Mar. 1, 2023).

[26] Opening Br. at 21.

[27] *Id.* at 23.

[28] *Imbragulio v. Unemployment Ins. Appeals Bd.*, 223 A.3d 875, 878 (Del. 2018).

[29] *Salamone v. Gorman*, 106 A.3d 354, 367 (Del. 2014) (en banc); *see also Parfi Holding AB v. Mirror Image Internet Inc.*, 817 A.2d 149, 154 (Del. 2002) (en banc) ("This Court reviews de novo the [trial court's] interpretation of the [agreement] as well as the application of relevant law.").

7

(12) "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate."[30] "A strong presumption exists in favor of arbitration, and, accordingly, contractual arbitration clauses are generally interpreted broadly by courts."[31] Arbitration is a "mechanism of dispute resolution created by contract[,]" and Delaware courts apply "basic principles of contract interpretation" to determine the scope of arbitration provisions.[32]

(13) We have concluded that the language of the arbitration clause does not support the narrow interpretation of "performance by the Lessee" asserted by Coronado. The parties' dispute directly relates to Coronado's performance of Article Six, specifically, whether Coronado's proposed retreat mining operations in the vicinity of the Coal Branch mine might injure or destroy the Coal Branch mine, or prevent the convenient and proper mining thereof, and whether Blackhawk's rejection of Coronado's plans infringed upon Coronado's right to perform its operations so as to recover the greatest amount of coal from the Powellton "A" seam. Blackhawk's rejection of Coronado's plans directly involves how Coronado may, or may not, perform under Article Six. "Performance" is broader than an action already completed. A party may propose to perform or assert a right to perform an action in the future. If the original lessor and lessee had intended to give the phrase

---

[30] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007).
[31] *Id.* at 430.
[32] *See Parfi Holding AB*, 817 A.2d at 156; *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (2006).

8

"performance by the Lessee" the narrow scope advocated by Coronado, it was incumbent upon them to include language that made that intent clear, and no such language was included. We see no error in the Superior Court's grant of Blackhawk's motion to dismiss.

(14) Coronado also makes an argument that reversal is required if this Court finds that the arbitration clause is ambiguous.[33] We do not find that the clause is ambiguous.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[33] Opening Br. at 23.