# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LLUIS TORRENT JEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-1417-LWW |
| | ) | |
| ARIEL X. BURT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 25, 2026
Date Decided: May 26, 2026

Brian O'Neill, CLARK HILL PLC, Wilmington, Delaware; Richard I. Scharlat, CLARK HILL PLC, New York, New York; Mark Beckett, BECKETT LAW LLC, New York, New York; Alexander Sakin, LAW OFFICE OF ALEXANDER SAKIN, LLC, New York, New York; *Counsel for Plaintiff Lluis Torrent Jerez*

Joelle E. Polesky, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, Delaware; Eric B. Porter, STRADLEY RONON STEVENS & YOUNG, LLP, New York, New York; *Counsel for Defendant Ariel X. Burt*

**WILL, Vice Chancellor**

The plaintiff consented to arbitration to win dismissal of a claim against him in a related New York lawsuit. But when the arbitrator issued a preliminary procedural ruling he disliked, the plaintiff rushed to Delaware to enjoin the very arbitration he had just embraced. This court is not an appellate body for an arbitral institution's internal rules. Nor will equity entertain the plaintiff's gamesmanship.

Because the parties clearly and unmistakably delegated the question of substantive arbitrability to the arbitrator, I decline to exercise jurisdiction. The defendant's motion to dismiss is granted under Court of Chancery Rule 12(b)(1); the plaintiff's motion for a preliminary injunction is denied as moot.

## I.    BACKGROUND

The following facts are drawn from the Verified Complaint ("Complaint") and documents it incorporates by reference.[1]

### A.    Atlas and Forsythe

Atlas Renewables LLC is a Delaware limited liability company that develops solar energy projects in Upstate New York.[2] It was formed in January 2020 by

---

[1] Verified Compl. (Dkt. 1) ("Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (providing that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citation omitted)), *aff'd*, 164 A.3d 56 (Del. 2017) (TABLE).

[2] Compl. ¶ 6.

plaintiff Lluis Torrent Jerez, a New York resident.[3] Torrent was Atlas's sole member at the time of its formation.[4]

In March 2020, Torrent and defendant Ariel X. Burt—a Bermuda resident— agreed to form Forsythe, Ltd., a Bermudian company that would provide consulting services to Atlas.[5] The parties each became 50% owners of Forsythe.[6] Their goal was for Forsythe to acquire Atlas.[7] Forsythe and Torrent entered into a Membership Interest Transfer Agreement (the "MITA") in September 2020, contemplating that Forsythe would acquire Torrent's membership interest in Atlas.[8]

The transaction never closed because Burt was allegedly unable to fund her portion of the purchase.[9] A dispute over whether the MITA is effective and whether Forsythe or Torrent owns Atlas ensued.[10]

## B.     The New York Action

In November 2023, Burt sued Torrent in New York state court (the "New York Action"), claiming that the MITA was effective and that Forsythe owns

---

[3] *Id.* ¶¶ 23, 27.

[4] *Id.* ¶ 27.

[5] *Id.* ¶¶ 6, 28.

[6] *Id.* ¶ 6.

[7] *Id.* ¶ 29.

[8] *Id.* ¶ 30.

[9] *Id.* ¶ 31.

[10] *Id.* ¶¶ 32-34, 36.

Atlas.[11]  In April 2025, Burt amended her complaint to add a claim that Torrent breached the Operating Agreement for Atlas Renewables LLC (the "LLC Agreement") by founding another solar energy company (the "Breach Claim").[12]

Torrent moved to dismiss the Breach Claim based on a Delaware forum selection clause in the LLC Agreement or, in the alternative, to compel arbitration.[13] The LLC Agreement contains an arbitration provision in Section 13.10, which requires that "any controversy or dispute arising out of th[at] Agreement . . . be submitted to arbitration in Delaware under the commercial arbitration rules then obtaining[.]"[14]

### C.  The Arbitration

While Torrent's motion to dismiss was pending in New York, Burt filed a Demand for Arbitration with the American Arbitration Association ("AAA") on June 30, 2025.[15]  She sought to arbitrate the Breach Claim and identified Burt as a "party to an arbitration agreement which provides for arbitration under the [AAA]

---

[11] *Id.* ¶ 36.

[12] *Id.* ¶¶ 38, 39; *see* Compl. Ex. A ("LLC Agreement"); *see also* Compl. Ex. C (New York Action complaint).

[13] Compl. ¶ 42; *see* LLC Agreement § 13.9.

[14] LLC Agreement § 13.10.

[15] Compl. ¶ 46.

Commercial Arbitration Rules [(the 'Commercial Rules')]."[16] Torrent moved to stay the arbitration on July 9 in deference to the New York Action.[17]

On August 1, Torrent filed a letter in the New York Action withdrawing his motion to dismiss or compel arbitration.[18] In that letter, he confirmed that he "consent[ed] to arbitration of the Statement of Claim [Burt] filed with the AAA under the administration of the AAA and pursuant to the applicable AAA Rules[.]"[19] He identified the "applicable" arbitral rules as "the rules of the International Centre for Dispute Resolution [('ICDR Rules')], the AAA's international arbitration rules[.]"[20] He also "retain[ed] all of his objections . . . as to admissibility and jurisdiction."[21]

After receiving Torrent's letter, the New York court dismissed the Breach Claim on October 6.[22] It held that "[r]eading the mandatory forum selection clause [in the LLC Agreement] together with the arbitration clause, . . . any action or

---

[16] *Id.* (quoting Compl. Ex. E at 1). Torrent argues that the Operating Agreement does not provide for arbitration under the Commercial Rules, and that the AAA is not necessarily the correct forum for arbitration. *Id.* ¶¶ 47-48.

[17] *Id.* ¶ 49.

[18] Compl. Ex. H.

[19] Compl. ¶ 51 (quoting Compl. Ex. H).

[20] *Id.* (emphasis omitted).

[21] *Id.*

[22] *Id.* ¶ 50; Compl. Ex. B.

proceeding brought in connection with [the] arbitral award rendered pursuant to the [LLC Agreement] must be brought in" Delaware.[23] Multiple claims and counterclaims remain pending in the New York Action, including Burt's claim that Forsythe owns Atlas.[24]

At a preliminary conference on September 25, the arbitrator stated its intent to apply the Commercial Rules rather than the ICDR Rules.[25] Torrent objected to the application of the Commercial Rules and attempted to withdraw his consent to arbitrate the dispute.[26]

On November 11, the AAA's Administrative Review Council determined that the arbitrator would "proceed with the administration of th[e] matter under the [Commercial Rules]."[27] It also confirmed that the arbitration would proceed absent a court order staying it.[28]

### D. This Litigation

Torrent filed this lawsuit on December 5, 2025, seeking a declaration that the LLC Agreement provides for ad hoc arbitration, conducted pursuant to a court order

---

[23] Compl. ¶ 50 (quoting Compl. Ex. B).

[24] *Id.*

[25] *Id.* ¶ 54.

[26] *Id.* ¶¶ 54-55.

[27] Compl. Ex. L; Compl. ¶ 56.

[28] Compl. ¶ 57.

or agreement of the parties.[29] He also seeks a preliminary and permanent injunction, barring Burt from pursuing arbitration until a final judgment has been entered in the New York Action.[30]

Torrent moved for a preliminary injunction shortly after filing his Complaint.[31] On January 16, 2026, Burt moved to dismiss the Complaint.[32] Briefing on the motions to dismiss and for a preliminary injunction proceeded in tandem.[33] Oral argument on both motions was held on February 25, 2026, at which time the motions were taken under advisement.[34]

## II.    ANALYSIS

Burt has moved to dismiss the Complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6).[35] A motion to dismiss in favor of an arbitration is properly analyzed under Rule 12(b)(1).[36] Such a motion does not raise a true lack

---

[29] *Id.* ¶¶ 63-65.

[30] *Id.* ¶¶ 58-62.

[31] Pl.'s Opening Br. in Supp. of Mot. for Prelim. Inj. (Dkt. 2) ("Pl.'s PI Opening Br.").

[32] Def.'s Mot. to Dismiss (Dkt. 10); Def.'s Brief in Opp'n to Mot. for Prelim. Inj. and in Supp. of Mot. to Dismiss (Dkt. 11) ("Def.'s Opp'n to PI and MTD Opening Br.").

[33] Pl.'s Reply Br. in Supp. of Mot. for Prelim. Inj. (Dkt. 15); Pl.'s Answering Br. in Opp'n to Mot. to Dismiss (Dkt. 18) ("Pl.'s Opp'n to MTD"); Def.'s Reply Br. in Supp. of Mot. to Dismiss (Dkt. 21).

[34] Dkt. 22.

[35] Ct. Ch. R. 12(b)(1); Ct. Ch. R. 12(b)(6).

[36] *See Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 340-44 (Del. Ch. 2023), *aff'd sub nom.*, *CSC Upshot Ventures I, L.P. v. Gandhi-Kapoor*, 326 A.3d 369 (Del. 2024) (TABLE).

of subject matter jurisdiction, but invokes an abstention doctrine where the court declines to exercise its jurisdiction to enforce the parties' contract.[37] Because I abstain from exercising subject matter jurisdiction, I do not reach the merits or the preliminary injunction motion.

## A. Substantive Arbitrability

The primary issue presented is whether the parties delegated gateway questions—such as jurisdiction and the arbitral rules to be applied—to the arbitrator. "[I]n a proceeding to stay or to compel arbitration, the question of whether the parties agreed to arbitrate, commonly referred to as 'substantive arbitrability,' is generally one for the court[]" to decide.[38] "There is an exception, however, when there is 'clear and unmistakable evidence' that the parties intended otherwise."[39]

The LLC Agreement alone does not contain "clear and unmistakable evidence" of an intent to delegate. Section 13.10 provides that "any controversy or dispute arising out of th[e] [LLC] Agreement . . . shall be submitted to arbitration in Delaware *under the commercial arbitration rules then obtaining* of [sic] any award

---

[37] *See id.* at 344 (explaining that the court "decline[s] to exercise its subject matter jurisdiction when parties have agreed to an otherwise enforceable arbitration provision").

[38] *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998).

[39] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (citation omitted).

or decision obtained from any such arbitration proceeding[.]"[40]  It does not identify the specific institutional rules to be applied or the scope of the arbitrator's decision-making authority.

Although the LLC Agreement lacks evidence of delegation, Torrent subsequently and unequivocally agreed to submit arbitrability issues to the arbitral forum.  In his August 1 letter to the New York court, Torrent "consented to arbitration of the Statement of Claim [Burt] filed with the AAA under the administration of the AAA and pursuant to the applicable AAA Rules (the rules of the . . . [ICDR])[.]"[41]  Torrent thus agreed not only to arbitrate Burt's claims before the AAA, but also to proceed under a body of arbitral rules that empower the arbitrator to resolve jurisdiction and arbitrability disputes.  Both Commercial Rule R-1(a) and ICDR Article 34 empower the AAA and the arbitrator to determine the applicable rules when the parties disagree.[42]  Because either set of rules leads to the arbitrator deciding her own jurisdiction, the threshold rule-set dispute is committed to the arbitral institution—not this court.

---

[40] LLC Agreement § 13.10 (emphasis added).

[41] Compl. Ex. H.

[42] Am. Arb. Ass'n, Commercial Arbitration Rules, Rules R-1(a), R-7(a) (2022); Int'l Ctr. Disp. Res. ("ICDR"), International Arbitration Rules, Arts. 21, 34 (2021).

Torrent argues that he only agreed to arbitrate under the ICDR Rules.[43] As a result, he insists that the arbitrator's preliminary decision to apply the Commercial Rules vitiates his consent to arbitrate.[44] But Torrent's August 1 letter lacks language conditioning his assent on the application of ICDR Rules.[45] Rather, Torrent expressed his unequivocal consent to arbitrate "with the AAA under the administration of the AAA . . . ."[46]

Torrent also cites *AffiniPay, LLC v. West* to argue that disputes over the applicable arbitral rules should be resolved by the court.[47] That case is not on point. *AffiniPay* involved three contracts that each mandated a different arbitral forum.[48] Here, there is a single contract (the LLC Agreement) and one tribunal (the AAA).[49]

---

[43] *Id.*; *see also* Pl.'s PI Opening Br. 13.

[44] Pl.'s PI Opening Br. 13.

[45] At oral argument, the parties debated whether the doctrine of judicial estoppel applies, given that the New York court dismissed the Breach Claim based on the forum selection and arbitration clauses rather than Torrent's August 1 letter. *See* Feb. 25, 2026 Oral Arg. Tr. (Dkt. 23) 14 (Torrent's counsel arguing the New York court did not rely on the agreement to arbitrate); *id.* at 28 (Burt's counsel arguing the New York court "expressly cite[d]" Torrent's consent to arbitrate). I need not rely on judicial estoppel to find a clear delegation of intent. But it is notable that Torrent filed the letter in the New York court, withdrew his motions based on it, and subsequently reaped the tactical benefit of a dismissal.

[46] Compl. Ex. H.

[47] 2021 WL 4262225 (Del. Ch. Sep. 17, 2021); *see* Pl.'s Opp'n to MTD 11.

[48] *AffiniPay*, 2021 WL 4262225, at *1.

[49] LLC Agreement § 13.10.

Unlike in *AffiniPay*, there are no "dueling" arbitration clauses that strip the arbitrator of jurisdiction to decide the rule-set dispute.[50]

Even under the ICDR Rules that Torrent invokes, the result is the same. Article 21 of the ICDR Rules states that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to arbitrability, [or] to the existence, scope, or validity of the arbitration agreement(s), . . . without any need to refer such matters first to a court."[51] By consenting to these rules, Torrent expressed his intent to delegate arbitrability to the arbitrator.

Because both the Commercial Rules and the ICDR Rules empower the arbitrator to decide jurisdictional questions, the AAA's decision regarding which rules apply does not alter the delegation of arbitrability. This court will therefore decline to intervene and will defer to the parties' decision to delegate these issues to the arbitral forum.

### B. Standing and Ripeness

Torrent's final argument is that the court must step in because Burt is a non-signatory to the LLC Agreement with only "hypothetical" rights at issue in the New

---

[50] *See AffiniPay*, 2021 WL 4262225, at *5.

[51] ICDR, International Arbitration Rules, Art. 21.1 (2021).

York Action.[52]  He frames this as a standing defect in the arbitration.[53]  Burt, for her part, characterizes the matter as one of ripeness.[54]  Regardless of the framing, both issues should be resolved by the arbitrator.

### 1.    Standing

Torrent argues that Burt lacks standing to pursue the arbitration because she is not a party to the LLC Agreement, and neither she nor Forsythe is an Atlas member.[55]  This argument is belied by Torrent's prior consent to arbitrate.

In the August 1 Letter, Torrent agreed to arbitrate Burt's Statement of Claim while reserving all objections as to "admissibility and jurisdiction."[56]  By reserving jurisdictional objections while otherwise consenting to arbitration under rules that commit jurisdictional questions to the tribunal, Torrent agreed to present any standing defenses to the arbitral forum rather than this court.  Any rebuke of Burt's standing is appropriately raised with the arbitrator.

### 2.    Ripeness

To the extent Torrent alleges that the arbitration is unripe because Atlas's ownership has not yet been resolved by the New York court, that too is an issue for

---

[52] Pl.'s Opp'n to MTD 14-18.

[53] *Id.* at 16.

[54] Def.'s Opp'n to PI and MTD Opening Br. 26-27.

[55] Pl.'s Opp'n to MTD 16.

[56] Compl. Ex. H.

the arbitrator.[57]  Under *Howsam v. Dean Witter Reynolds, Inc.*, the satisfaction of conditions precedent to arbitration is a matter of procedural arbitrability.[58] "[Q]uestions of procedural arbitrability . . . should be decided by the arbitrator."[59]

The ripeness of Burt's claims is a "condition[] precedent to an obligation to arbitrate[.]"[60]  If a claim is unripe, a court—or arbitrator—will decline to exercise jurisdiction.[61]  Given that ripeness is an issue of procedural arbitrability, it is up to the arbitrator to decide.  If Burt is a stranger to the LLC Agreement, the AAA tribunal is fully capable of issuing a dismissal or staying the arbitration in deference to the New York Action.

*       *       *

---

[57] Def.'s Opp'n to PI and MTD Opening Br. 26-27.

[58] 537 U.S. 79, 85 (2002) (defining "procedural arbitrability" as issues like "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met" (citation and italics omitted)); *see also James & Jackson*, 906 A.2d at 79 (discussing *Howsam* and explaining that "Delaware arbitration law mirrors federal law").  Procedural arbitrability differs from substantive arbitrability issues, which are "gateway questions about the scope of an arbitration provision and its applicability to a given dispute."  *Id.*

[59] *Brown v. T-Ink, LLC*, 2007 WL 4302594, at *12 (Del. Ch. Dec. 4, 2007).

[60] *Howsam*, 537 U.S. at 85; *cf. SBC Interactive*, 714 A.2d at 762 (explaining that "resolution of procedural questions, including whether the invocation of arbitration was proper or timely[] . . . is left to the arbitrator[]").

[61] *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) (explaining that Delaware courts will "decline to decide issues that may not have to be decided or that create hypothetical harm" (citation omitted)); *XL Specialty Ins. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (stating that Delaware courts will refrain from "exercis[ing] jurisdiction over a case unless the underlying controversy is ripe[]").

12

The parties clearly and unmistakably delegated questions of substantive arbitrability to the arbitrator: Burt by filing the arbitration, and Torrent by his August 1 letter. In addition, issues of standing and ripeness can be resolved in the arbitral forum. I therefore decline to exercise subject matter jurisdiction over the dispute and grant Burt's motion to dismiss under Rule 12(b)(1).

### C. Preliminary Injunction

Because Burt's motion to dismiss is granted, Torrent's motion for a preliminary injunction is moot. Having declined to exercise subject matter jurisdiction over the underlying dispute, this court cannot take up the merits of whether the arbitration should be enjoined. The preliminary injunction motion is denied on that basis.

## III. CONCLUSION

Burt's motion to dismiss the Complaint is granted under Rule 12(b)(1). The Complaint is dismissed without prejudice. Torrent's motion for a preliminary injunction is denied as moot.